BANK OF LEXINGTON *v.* COOPER.

[76 South. 659, In Banc.]

1. MORTGAGES. *Mistake of recorder. Effect. "Appears on face of record." "Appears by the record."*

Under Code 1906, section 2796, providing that where the remedy to enforce any deed of trust, etc., "appears on the face of the record" to be barred by the statute of limitations, the lien shall cease as to creditors and subsequent purchasers for a valuable consideration without notice unless within six months after such remedy is barred, the fact that such deed, etc., has been renewed or extended is duly filed for record. The fact that the clerk, in recording a trust deed, described the maturity of the note as January, 1904, instead of its true date January, 1905, would

not bind the beneficiary where it discharged its duty by filing the trust deed for record, there being no difference between the phrase "appears on the face of the record" and the phrase "appears by the record."

2. MORTGAGES. *Priorities. Recording. Patent ambiguity.*

Where the record of a trust deed recited the matuiity of the note secured thereby as January 1, 1904, and the trust deed as dated April 14, 1904, which described the note as bearing even date therewith, a patent ambiguity was disclosed which put the holder of a subsequent trust deed upon notice, since a promissory note of date April 14, 1904, cou'd not possibly be made to mature at the earlier date of January 1, 1904.

3. MORTGAGES. *Priorities. Recording. Patent defects.*

Where the renewal trust deed correctly described the true maturity of the new note, the fact that the scrivner by mistake dated the deed 1911 instead of 1910 would not bind the beneficiary in favor of the holder of a subsequent deed of trust, where the acknowledgment bore date of 1910 and the instrument was filed for record in 1910, thus making the mistake patent upon the face of the record.

4. MORTGAGES. *Defective record. Secondary liens. Creditors. Subsequent purchaser.*

Where plaintiff had a live lien unaffected by any mistake of the clerk in recording, when the first trust deed to defendant was made and the original consideration by defendant was carried forward into a renewal trust deed, this remained a secondary lien within the principle that defendant was not a "creditor or subsequent purchaser" within Code 1906, section 2796, providing that a lien shall cease as to creditors and subsequent purchasers if a trust deed, etc., appears from the record to be barred.

APPEAL from the chancery court of Holmes county.

HON. A. Y. WOODWARD, Chancellor.

Bill by the Bank of Durant against J. A. McDonald and the Bank of Lexington, in which R. L. Cooper, special agent was substituted as plaintiff. From a decree for complainant, defendant appeals.

This case presents conflicting claims as to the priority of liens of certain deeds of trust held by appellant Bank of Lexington and the appellee as special agent of the Bank of Durant. The facts are that one J. A. Mc-

Donald, on April 14, 1904, borrowed from the Bank of
Durant six hundred and forty-five dollars, evidenced by
a promissory note for said sum due January 1, 1905.
To secure this note McDonald executed a deed of trust
on certain lands, a description of which is not material
to a decision of this case, but which are fully described
in a deed of trust executed by McDonald to secure the
said loan. The note and deed· of trust bear the same
date, and the original trust deed described the note and
gives the true date of its maturity. The note was
also signed by Mrs. J. A. Hamilton. The evidence
shows that Mrs. Hamilton was an accommodation sure-
ty. The deed of trust was duly acknowledged and re-
corded. McDonald did not pay the said note, and on
October 11, 1910, he executed a new note to the Bank of
Durant, due and payable January 1, 1911, and to secure
the same executed a new deed of trust on the same land
embraced in the first deed of trust. The new trust deed
fully described the new note, its date and maturity, and
recited expressly that it was given in renewal and con-
tinuation of the old indebtedness, the exact recital be-
ing:

"Said note being a renewal and continuation of the
note and deed of trust given the said bank on April 14,
1904 (due January 1, 1905) and of record on page 575,
Book 14 at Lexington."

The renewal trust deed also described accurately the
true maturity of the new note as "due and payable on
the first day of January, 1911." In preparing the re-
newal trust deed Mr. Cooper, an officer of the Bank of
Durant acting as scrivener, by mistake dated the in-
strument "the 11th day of October, A. D. 1911." The
proof shows that the real date was October 11, 1910.· In
addition to the testimony of Mr. Cooper on this point,
the acknowledgment bears date October 12, 1910, the in-
strument was filed for record with the chancery clerk
October 20, 1910, and recorded the same day. The true
date of the instrument is further reflected by its recitals
showing, among other things, that it was executed to se-

cure a note maturing January 1, 1911. The original promissory note which this instrument secures bears date October 11, 1910, and the true date of its maturity was properly written upon its face.

On June 15, 1908, Mr. McDonald being indebted to the Bank of Lexington, executed a deed of trust in favor of the said Bank of Lexington to secure an indebtedness of three hundred and sixty-one dollars and sixty-six cents. On March 11, 1910, he executed a second deed of trust to the Bank of Lexington for one thousand one hundred and eighty-eight dollars and thirty-seven cents, thereby renewing the old indebtedness and enlarging the same. Thereafter, on January 26, 1912, a third deed of trust was executed by McDonald in favor of the Bank of Lexington for one thousand eight hundred and fifty-four dollars and thirty-seven cents. On January 14, 1915, the Bank of Durant filed the bill in this cause against J. A. McDonald, then a non-resident of the state and residing in the city of Memphis, Tenn., and against the Bank of Lexington and certain other defendants who claimed liens upon the property. The bill sought foreclosure of the deed of trust held by the complainant. A demurrer interposed by the defendants McDonald and Bank of Lexington was withdrawn, and after the bill had been amended by the complainant, the Bank of Lexington and its trustee, L. M. White, filed an answer. A decree *pro confesso* was taken against the defendant McDonald, and the cause proceeded to trial upon the bill, answer, and proof. It appears that after the original bill was filed the complainant ascertained that in recording the first deed of trust in favor of the Bank of Durant the clerk in recording the instrument described the maturity of the note as January 1, 1904, instead of its true date, January 1, 1905, The amendment charged that neither the complainant nor its attorney had ever seen or examined the record of this trust deed, and did not know that there was an error in recording this instrument until after the original bill in this cause had been filed. The answer of the Bank of

Lexington charges that the note executed by McDonald on April 14, 1904, is shown by the record to have matured January 1, 1904, and was therefore barred when the complainant took a renewal note and trust deed October 11, 1910. It further appears that in February, 1915, after the bill was filed, the Bank of Durant consolidated with the People's Bank of Durant and that appellee, R. L. Cooper, was appointed by the shareholders of the Bank of Durant as special agent to collect this and other indebtedness. An order was entered by the court, directing that the suit be continued by Mr. Cooper as special agent "for and in behalf of said bank and the parties in interest." It further appears that, pending litigation the Bank of Lexington had its trustee foreclose the deed of trust in favor of the Bank of Lexington, and the latter appeared at the trustee's sale and bid in the property for the consideration of fifty dollars. The final decree was in favor of the complainant, and from this decree the Bank of Lexington prosecutes an appeal.

The assignments of error challenge the action of the trial court in reforming the deed of trust executed October 11, 1910, so as to correct the error of the scrivener in dating the same, the action of the court in decreeing that the indebtedness due the appellee was a prior lien over the indebtedness due appellant, and the action of the court in granting the prayer of the bill and in giving complainant priority of lien.

*E. F. Noel,* for appellant.

According to the undenied facts, the remedy to enforce the deed of trust relied on, "appears on the face of the record to be barred by the statute of limitations." The penalty of which, according to the statute is "the lien shall cease and have no effect" unless the renewal of extension or new deed of trust be put of record within six months. Code 1892, sec. 2462; Code of 1906, sec. 2796.

According to the Code the debt secured need not be barred, but only as appears "on the face of the record." It is the appearance, not the reality, which constitutes the bar here claimed; and this appearance is of a note maturing according to "the face of the record," and the actual date of the execution according to the recitals of the execution clause, of the deed of trust *vel non* to defeat the statute of limitations, according to these two deeds of trust, on the face of the record, the secured debt had been barred from January 1, 1910, to October 11, 1911, to defeat this bar of one year, sixteen months and eleven days, appellant takes two exactly contradictory positions; the one that the appearance of the face of the record should not be considered as against the actual recital of the first deed of trust, but that the deed of trust and not the action of the officers who recorded the same should control; and the other position is that the actual recital actuall written, by the president of appellee's bank October 11, 1911; and as written signed, and acknowledged as of the date written should not be considered, and should not control but that the dating of the acknowledgment and of the filing of the instrument for record should control the recited date.

We do not think that the counsel who filed this brief could find, or that any one else could find, a case which holds that an essential recital in a deed of trust, such as the actual dating in this case, written by one of the parties, to the deed of trust and signed by the other, can be changed by the officer who takes the acknowledgment or the officer who files the instrument for record, or both combined. Acknowledgments serve only to authenticate instruments for purposes of record, and record only to give constructive notice to the world. Neither carry the deed of trust, or were even intended to carry into the deed of trust, something not therein contained nor to alter its contents. In an action for the reformation of an instrument, where actions for reformation can ever effect an intervening *bona-fide* incumbrancer, who

is only affected by what the instrument itself contains, unaided by its means of authentication.

Therefore, I confidently submit that the two positions, both of which are vital, and both of which are taken by appellee, are contradictory, and that the failure of either defeats its claim; and that if the records, according to their appearance and face, control, appellee is defeated; and even if the originals themselves a part of entries of acknowledging or recording officers thereon, be considered, likewise he is defeated.

*J. Weiner,* for appellee.

There is no inconsistency at all between section 2796 of the Code and the decision in the case of *Mangold* v. *Barlow,* 61 Miss. 593. Each covers an entirely different proposition. The argument for appellant and the several cases cited as to construction are not at all applicable to the facts shown by the record in this case, and admitted by appellant. It is but a confusion of different principles, and of the plain facts as they appear. There is no occasion for construction.

Section 2784 of the Code makes it imperative that the instrument be acknowledged before it is recorded, and makes the acknowledgment an essential part of the conveyance in the record thereof. Section 2787 as well as 2784 both require the instrument to be lodged with the chancery clerk for record. Neither section requires any more. This was the law long before the case of *Mangold* v. *Barlow,* and was never changed, and still is the law.

When the statute, sec. 2796, says that: ''Where the remedy to enforce a deed of trust, etc., which is recorded, appears on the face of the record to be barred by the statute of limitations, the lien shall cease and have no effect, etc., unless within six months such remedy is so barred the fact that such deed of trust has been renewed or extended be entered on the margin of the record thereof by the creditor, debtor, or trustee, attested by the clerk, or a new mortgage, deed of trust or lien,

noting the fact of renewal or extension, be duly filed for record within such time.''

The statute means, of course, that where the original instrument was recorded correctly, it does not mean a case where the ''face of the record,'' shows an untrue proposition, caused by the negligence or mistake of the clerk in recording the original trust deed. The statute only requires the mortgagee to lodge the instrument with the clerk for record; it does not require him to go and examine the records and see whether or not the clerk has recorded it correctly.

The doctrine established in this state by the decision in the case of *Mangold* v. *Barlow,* means that ''where a man has done his duty and all that the statute requires of him he shall not suffer if anyone is mislead by the negligence or mistake of the clerk. If a subsequent purchaser or mortgagee is thus mislead, he must look to the clerk for redress. ''From the time the instrument is lodged with the clerk for record, it becomes notice of what it contains and not what the recording officer may make it show on the record.'' When section 2796 of the Code was enacted, the legislature never meant to nor did they change this doctrine. In the *Mangold* v. *Barlow* case there was a mistake made by the clerk in copying the lands described in the deed, but the principle there established covers the case at bar completely. Before this statute was enacted, a person might hold a deed of trust and when the debt or note was about to become barred, or for that matter after it was barred, have the debtor renew it by appropriate words on the back of the note or trust deed and continue to do so indefinitely. To remedy this the legislature enacted that where the debt is renewed such renewal shall be put on record within six months of the time it appeared barred on the record. Now this was promptly done in the case at bar. The note of April 14, 1904, due January 1, 1905, applying the six years statute of limitation, did not expire before January 1, 1911, however it was renewed and a new deed of trust given properly acknowledged

and filed for record all in October, 1910. The Bank of Durant was not guilty of any laches or delay. It did its duty. And in such case the principle and doctrine established in this state still prevails, otherwise the legislature would have expressed it differently. All the statutes simply requiring the acknowledgment by the grantor and the lodgement of the trust deed or other instrument with the chancery clerk for record have been reenacted in each Code since the case of *Mangold* v. *Barlow,* and have not been changed. In line with this doctrine and with all the Code provisions on the subject, the very language of section 2796 accentuates this most conclusively when it says: "or a new mortgage, deed of trust or lien, noting the fact of renewal or extension, be duly filed for record within such time."

Counsel for appellee lays undue stress on the words "face of the record." On page 2 of the brief it is contended for appellant that the statute requires the face of the record to be changed "by marginal entry or recording a new deed of trust." And it is further claimed for appellee that "there is no claim nor pretense that by marginal entries or otherwise there was any such change of the face of the record." This is a mistake for there was the renewal, promptly and timely, not by marginal entry but more forceful, it was by new deed of trust as provided by the statute. (According to appellee's contention they give this statute a most tragical construction.) Surely they do not mean to say that the new deed of trust should have been recorded or copied on the margin of the record or on the very face or top of the former deed of trust.

It may not be amiss to note here in connection with the renewal deed of October 11, 1910, that section 2805, Code 1906, requires the clerk to certify the hour and minute, the day and the month and the year when he received it, and when recorded, etc., to mark thereunder the number of the book and the page; and the instrument as to parties without notice takes effect from the very time of such delivery. Section 2788, Code.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). Appellant contends that it had the absolute right to rely upon the recitals appearing on the face of the recorded instruments, and accordingly that the court, in disposing of the conflicting claims of the parties hereto, must regard: First, the true maturity of the first note given the Bank of Durant as January 1, 1904; and secondly, must regard the true date of the renewal trust deed executed to the Bank of Durant as October 11, 1911. These are the two mistakes which the undisputed proof shows to appear on the records in the chancery clerk's office. If these contentions prevail and appellee is bound by the mistake of the clerk in recording, then, appellant submits, that the statute of limitations barred the first note on January 1, 1910, and no renewal was entered of record within six months thereafter. Appellant relies upon section 2796, Code of 1906, which reads as follows:

"Where the remedy to enforce any mortgage, deed of trust, or other lien on real or personal property which is recorded, appears on the face of the record to be barred by the statute of limitation, the lien shall cease and have no effect as to creditors and subsequent purchasers for a valuable consideration without notice, unless within six months after such remedy is so barred the fact that such mortgage, deed of trust, or lien has been renewed or extended be entered on the margin of the record thereof, by the creditor, debtor, or trustee, attested by the clerk, or a new mortgage, deed of trust, or lien, noting the fact of renewal or extension, be duly filed for record within such time. And where a suit shall have been brought to keep a judgment alive within seven years from the rendition of such judgment, the general lien of such judgment shall expire as to creditors and subsequent purchasers for a valuable consideration without notice, at the end of seven years from the rendition of such judgment, notwithstanding such suit to keep alive the judgment, unless a notation to keep

alive such judgment shall be made on the judgment roll within six months after the expiration of seven years from the time of the rendition of such judgment.''

Counsel stress and rely upon the words ''on the face of the record.'' Section 2788 of the Code expressly provides that a deed of trust and other instruments ''shall take effect, as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors, only from the time when delivered to the clerk to be recorded.'' Section 2787 requires deeds of trust and mortgages to be recorded, and declares that they ''shall be void as to all creditors . . . unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded in the same manner that other conveyances are required to be acknowledged or proved and recorded.'' Our court construed sections 2787 and 2788 in the case of *Mangold* v. *Barlow,* 61 Miss. 593, 48 Am. Rep. 84, and in strong terms aligned this court with those authorities which hold that a grantee has done all required of him when he deposits his deed or deed of trust with the proper officer for record and is not bound by a mistake of the clerk in recording. Our court, speaking through CAMPBELL, C. J., says:

''Does the grantee acquit himself fully of all duty when he delivers the deed to the proper officer for record, or is it his duty to see that the instrument is properly recorded? And if a mistake is made in recording by which a subsequent grantee is misled and injured, whose claim shall prevail, that of the first grantee, who relied on the officer to do his duty, or of the second grantee, who, in the faith that the record is true, acts upon it? Shall the deed prevail or the record of it? There is great contrariety of opinion on this subject in other states. . . . After the most careful consideration we range ourselves with the minority, and hold that a grantee fully acquits himself of all duty imposed by law when he lodges the instrument with the proper officer for record, and from that time it is notice to sub-

sequent purchasers and creditors of what it contains, and not of what the recording officers may make it to show on the record. The clerk is not the agent of the grantee, and he is not responsible for his blunders. He has as much right to rely on the fidelity of the officer as has a subsequent purchaser. '  .  .  . The first grantee, having done all that he is required to do to give notice of the instrument, may safely repose on the presumption that the recording officer has done his duty, and if subsequent purchasers or creditors suffer injury from official negligence or misconduct, they must seek redress from the party at fault, and cannot visit the loss on him who has done no wrong.  .  .  . It is not for his benefit that the recording is to be done, but for others. The state has undertaken to have the recording done, and if one suffers from the negligence of the officer he must seek redress from the officer.''

At the time this opinion was rendered the authorities were in conflict, many cases holding at that time that the clerk is the agent of the grantee, and the mistakes of the clerk must be looked upon as the mistakes of the party who seeks recordation of his instrument. Our court repudiated the reasoning of the opinions which declare that where one of two innocent persons must suffer in a case of this kind, the loss must fall upon the person who lodges with the clerk the instrument to be recorded, on the theory that the clerk acts for the beneficiary or grantee and is under his control. Our court adopted the view that the clerk is a public officer employed to serve the public generally, and that a party offering a document for record in due form and properly acknowledged or proved has a right to presume that the clerk will perform his duty. Mr. Jones in his work on Mortgages, in discussing the two views, says:

''The other view prevails under statutes which make the deed operative as a record from the time it is filed for record, and the apparent weight of authority is that any error in transcribing the deed, as, for instance, in the date of the deed or of the acknowledgment, or in the

sum secured by a mortgage, does not prejudice the
grantee or mortgagee. The mortgagee is regarded as
having discharged his entire duty when he has delivered
his mortgage, properly executed and acknowledged, to
the recording officer, and as being in the same attitude
as if the deed were at that moment correctly spread upon
the record book, so that no error in transcription can
deprive the deed of its operation as a recorded instru-
ment, and subsequent purchasers are charged with con-
structive notice, notwithstanding the officer does not
properly record the instrument. . . .

"The grantee is under no obligation to supervise the
work of the recorder, and see that he spreads the deed
upon record, or that he puts it upon the index. If,
however, the record is such that it suggests a probable
mistake in recording. it puts purchasers upon inquiry
and charges them with notice of what the deed con-
tains. In discussing a case where a purchaser was put
upon inquiry by examination of a defective record
showing his sources of title, which disclosed interven-
ing equities, the United States Court of Appeals [The
W. B. Cole, 59 Fed. 182, 8 C. C. A. 78], per Judge
TAFT, said: "The proper construction of the recording
acts charges every person taking title with all convey-
ances or mortgages made by any one in the chain of
title while he holds title, whether the recording of such
conveyances occur then or not. If, upon the record, a
prior conveyance seems to be defeated by a subsequent
one through delay in recording, then the person taking
title must inquire as to the facts which might defeat
the statutory effect of such prior record. . . . A
purchaser is charged with notice of his chain of title,
whether the grantees therein are bona fide purchasers
or not.' " Jones on Mortgages (7 Ed.), par. 517.

But we are asked to enforce a different rule and to
apply a different interpretation to section 2796, declar-
ing that when a lien appears on the face of the record
to be barred, it ceases unless renewed within six
months. In our opinion counsel play upon the words,

"on the face of the record." If the record in the present case spoke the truth, there would, of course, be no controversy. This statute did not contemplate a false or fraudulent record. There is no more reason for holding the beneficiary of a deed of trust bound by a mistake in the record under this statute than there is to bind the grantee or beneficiary under sections 2787 and 2788. Under either statute the grantee or beneficiary discharges his duty when he files his instrument for record. The express obligation of section 2796 under review is that the beneficiary must either have the renewal or extension entered on the margin of the record, or to have a new deed of trust "duly filed for record." In the present case appellee Bank of Durant took a renewal deed of trust in due form, properly acknowledged, and had it "duly filed for record." There is no difference between the phrase "appears on the face of the record" and the phrase "appears by the record." We have often heard the expression that the holder of a deed is charged with notice of all recitals appearing on the face of his title deeds. The face of the record is nothing more than the recitals of the record and it is always contemplated that these recitals are the true transcripts from the original and not false recitals. It is suggested that the legislature, when it in 1896 first enacted the statute appearing as section 2462, Code of 1892 (2796, Code of 1906), intended to change the holding announced in the *Mangold-Barlow Case, supra*. But there is no real basis for such inference. Our court was construing what was then section 1213, Code of 1880, and this section was brought forward in the Code of 1892 and again incorporated in the Code of 1906, and has neither been repealed nor amended. The legislature was evidently content with the construction which our court had placed upon that statute, and, following the judicial construction, re-enacted the law and thereby approved the construction which the court had seen fit to place upon the statute. The only change was the enactment by the legislature in 1896 of the statute

now appearing as 2796 of the Code, and in construing this new statute we are governed by the same principles announced by the court in the Mangold-Barlow Case. The opinion in that case announces in language most emphatic that the clerk is not the agent of the party who offers a document for record, and that the holder of the instrument, whether deed or deed of trust, is not obliged to oversee the work of the recorder or to follow up the clerk to ascertain whether he has discharged his official duty. The legislature has not changed the construction, and the principles which controlled the court in the Mangold Case should control in the present case. There can be no difference in the legal principles governing both cases.

But let us examine a little further and a little deeper the real defense of appellant Bank of Lexington. Was appellant misled by the mistake of the clerk in reciting the maturity of the first note as January 1, 1904? The recorded trust deed was dated April 14, 1904, and described the promissory note which it secured as "bearing even date herewith." The instrument then as recorded shows upon its face that it secured a promissory note dated April 14, 1904. A promissory note of that date could not possibly be made to mature at the earlier date of January 1, 1904, several months prior to its execution. The record, then, discloses a patent ambiguity, and put the Bank of Lexington upon inquiry as to the true facts. The recorded instrument does not recite that it is given to secure an indebtedness which matured January 1, 1904, some months prior to the date of its execution, but expressly recites that it is given to secure a promissory note. The debt then is evidenced by commercial paper, and the recitals as to the description of this commercial paper are material and pertinent. Mr. Jones in paragraph 524 declares that the record is notice, not only of the contents of the mortgage, but of all matters suggested thereby. He says:

"Although the debt or the property be not fully described, the record is notice of all that is said about it, and a purchaser is bound by the statement made, and by the information he is put upon the inquiry to find out. . . . It is notice not only to purchasers, but to the subsequent creditors as well. . . . The record imparts notice of all the facts which could have been ascertained by an actual examination thereof, including not only those recited in the record, but also material matters suggested thereby, which might be disclosed by reasonable inquiry."

And in speaking about the description of the debt secured and the necessity to make inquiry, Mr. Jones, in paragraph 579, says:

"A general description of the debt is sufficient to put all parties interested upon inquiry, and to charge them with notice of all facts that could be obtained by the exercise of ordinary diligence and the prosecution of the inquiry in the right direction. A party willfully closing his eyes against the lights to which his attention has been directed, and which, if followed, would lead to a knowledge of all the facts, is chargeable with notice of every fact that he could have obtained by the exercise of reasonable diligence."

In the case at bar, if the Bank of Lexington had pursued this inquiry, they would have at once ascertained that a mistake had been made by the recorder. There was no mistake in the promissory note, and either this note or the original trust deed in the hands of the Bank of Durant would have disclosed the truth. As a matter of fact and of law the note was not outlawed until January 1, 1911. Prior to this time, and on October 11, 1910, a renewal was executed and at once filed for record. This indebtedness was never paid, constituted a prior lien, and justified the final decree rendered in this cause. There is no merit whatever in the argument that the Bank of Durant is bound by the mistake of the scrivener in reciting the date of the renewal trust deed as October 11, 1911. The mistake is patent upon

the face of the record, and any reasonably prudent man
would at once detect the mistake by an inspection of
the record. This mistake is shown: First, by the ac-
knowledgment; secondly, by the date the instrument
was filed with the clerk for record; and, thirdly, by the
recitals or description of the indebtedness contained in
the instrument itself. On the trial of the case the mis-
take is further shown by the testimony of Mr. Cooper.

There is another view of this case about which a few
remarks would be proper. The first deed of trust in
favor of the appellant Bank of Lexington was January
15, 1908. At that time admittedly appellee held a live
lien, unaffected by any mistake of the clerk in record-
ing. At the time the Bank of Lexington took its first
lien, it at least had constructive notice of the prior lien
in favor of the Bank of Durant. The advances which
the Bank of Lexington then made to Mr. McDonald
were never paid, but were carried forward into renewal
trust deeds here claimed to be priorities. Under any
view of this case, then, the original consideration ad-
vanced under the first deed of trust was and has always
been a second lien. There is no showing whatever that
appellant was actually misled by any of the recitals of
record. Appellant showed by its own witnesses that its
offices did not search the records and are affected only
by constructive notice. The case, then, would appear
within the principle announced in *Klaus* v. *Moore,* 77
Miss. 701, 27 So. 612, where our court through CAL-
HOON, J., said:

"But section 2462 was enacted to protect creditors
and purchasers who parted with something on the ap-
pearance of the record, and cannot be availed of by
Klaus. He took his junior trust conveyance before
there was the appearance of any bar on the record, and
is neither creditor nor subsequent purchaser within the
meaning of this statute."

There is no controversy about appellee enlarging its
debt. The indebtedness here decreed to be a first lien
has been a legal indebtedness since April 14, 1904, and

was outstanding many years before the Bank of Lexington ever advanced a cent. Equity and the law are with the appellee in this case, and we see no good reason why the decree of the learned chancery court should be disturbed.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I cannot accept the construction the majority places upon section 2796 of the Code of 1906. This section reads as follows:

"Where the remedy to enforce any mortgage, deed of trust, or other lien on real or personal property which is recorded, appears on the face of the record to be barred by the statute of limitation, the lien shall cease and have no effect as to creditors and subsequent purchasers for a valuable consideration without notice, unless within six months after such remedy is so barred the fact that such mortgage, deed of trust, or lien has been renewed or extended be entered on the margin of the record thereof, by the creditor, debtor, or trustee, attested by the clerk, or a new mortgage, deed of trust, or lien, noting the fact of renewal or extension, be duly filed for record within such time. And where a suit shall have been brought to keep a judgment alive within seven years from the rendition of such judgment, the general lien of such judgment shall expire as to creditors and subsequent purchasers for a valuable consideration without notice, at the end of seven years from the rendition of such judgment, notwithstanding such suit to keep alive the judgment, unless a notation to keep alive such judgment shall be made on the judgment roll within six months after the expiration of seven years from the time of the rendition of such judgment."

The deed of trust in suit for the appellee, as taken, made the debt mature on January 1, 1905, but by mistake in the recording, the record recited that the note

matured January 1, 1904. As the statute begins to run on a debt from the date when a suit can first be brought, it would be the date the note was due and payment refused. The statute would begin to run, if the record governed, January 1, 1904, and the right as well as the remedy would become barred January 1, 1910, and this appears of record to be the fact. If the statute means what it says, "appears on the face of the record to be barred by the statute of limitation," then in March, 1910, when the appellant took its second deed of trust, the lien of the appellee appeared to be barred by the record and it was not renewed, nor was any entry made on the marginal record, showing renewal within six months from the date which it appears of record to have been barred. This statute (section 2796) first appeared in our law with the adoption of the Code of 1892, being section 2462 of the Code of 1892, which was long after the decision in *Mangold* v. *Barlow,* 61 Miss. 593, 48 Am. Rep. 84. At the time that decision was rendered there was no such statute as section 2796 of the Code. In delivering the opinion of the court in the *Mangold* v. *Barlow Case,* the court frankly conceded that the decision then rendered was against the decided weight of authority, the court saying:

"The decided weight of authority seems to be in favor of the view that the record may be relied on by a subsequent purchaser, and that he cannot be affected by a deed not truly recorded (citing numerous authorities). After the most careful consideration we range ourselves with the minority, and hold that a grantee fully acquits himself of all duty imposed by law when he lodges the instrument with the proper officer for record, and from that time it is notice to subsequent purchasers and creditors of what it contains, and not of what the recording officers make it show on the record."

Manifestly, the present section of the Code was enacted for the purpose of placing this state in line with the majority of the states of the Union upon this

proposition.  It seems to me that there could be no
doubt of the wisdom of the present statute, for how can
a person dealing with property be expected to hunt
up all incumbrances that may appear on record whose
actual security may not be within the limits of the state
or within reach of any reasonable inquiry?  The section
as construed by the court puts the onerous burden upon
the person either buying or becoming a creditor to ac-
tually look up recorded conveyances and compare them
with the record of the conveyance, an undertaking that
manifestly is impractical and cannot be carried out in
practice.  The construction placed upon the section by
the majority absolutely makes section 2796 a legislative
farce, because if the rule is to remain the same, and if
what appears on the face of the record is not to gov-
ern as against the actual instrument given, it would be
foolish to put a statute of this kind on the book.

In regard to the proposition advanced in the majori-
ty opinion that the face of the record showed or recited
that the note secured by the mortgage was of even
date and tenor as the instrument, the deed of trust,
which deed of trust was dated subsequent to January
1, 1904, and that this would charge subsequent pur-
chasers and incumbrancers with the duty of making
inquiry, I think it sufficient to say that the date of the
indebtedness secured is not material.  It has no effect
whatever in disclosing whether or not the remedy would
be barred by the statute of limitation.  The statute of
limitation does not run from the date of an instrument,
but runs from its maturity, and the record showed that
the deed of trust would be barred by the statute of lim-
itation on January 1, 1910, and therefore the second
deed of trust taken by the appellant would be protected.
The usual printed forms used in this state have printed,
"of even tenor and date," when referring to the note,
and does not usually describe the note as to date by day
of month and year.

115 Miss.—51

In regard to the proposition that the first deed of trust taken by the appellant was taken on June 15, 1908, during the period when the appellee's deed of trust appeared to be in full force of record, I think that this contention is answered by the fact that in March, 1910, after the deed of trust of the appellee appeared from the record to be barred, that the appellant took a new deed of trust, advancing additional moneys, and extending the time for the payment of the indebtedness in 1908, under which contract it could not bring suit until the maturity of the paper then taken. I think this is sustained by the authority of *Schumpert* v. *Dillard, etc., Co.,* 55 Miss. 348. I quote the second syllabus of this case as follows:

"A mortgage given for a pre-existing debt is not invalid for want of valuable consideration, as against a prior unrecorded mortgage, where the time of payment of the debt is extended by a note taken four days before the execution of the mortgage, if it appears that the giving of the note and the execution of the mortgage formed one transaction."

Inasmuch as the appellee did not renew its security within six months from the date that it appeared to be barred, it became absolutely barred as to appellant, and could have no further effect upon the rights of the appellant. The appellant could rightfully treat it as being at an end, and could either foreclose his debt due or take a new security relying for protection upon the record. It is much easier for a mortgagee or a lien-holder to see that the instrument is correctly recorded than it is for the general public to make such comparison, for the reason that the paper to be compared with the record is in the hands of the mortgagee, while another person can only secure the mortgage by permission of the holder, and manifestly no sensible business man would surrender his mortgage or deed of trust to every person, or to any person for that matter, for the purpose of carrying it to the county records and mak-

ing a personal comparison. If the clerk makes a mistake in recording he is responsible to the holder of the paper, and such holder may maintain an action upon the clerk's bond for an losses sustained by him on account of such mistake.

The majority refer to the case of *Klaus* v. *Moore*, 77 Miss. 701, 27 So. 612, where the court, speaking through Judge CALHOON, said that the statute applied only where a person had parted with something on the face of the record, or who had been misled to his injury by the record. If we treat the appellant as being charged with notice of the record and treat him as having knowledge of the record, then when he took his security without actual knowledge of the appellee's rights, he has parted with something, and has been injured by the record, and that case should be authority for the appellant rather than the appellee. In that case the controversy, however, was different from the one here. It has but slight bearing upon this proposition. I think in addition to this that the holder of a deed of trust or mortgage should see that the debt which the mortgage secures is properly described in the mortgage, and, if it is not, that he suffers the consequences of such carelessness rather than an innocent purchaser for value or a creditor. For these reasons I am of the opinion that the judgment should be reversed and the appellant's claim in 1910 should be preferred over the appellee, but the claim of the appellant taken in 1912 should be subordinated to the appellee.