SULLIVAN v. NOBLES, et al.

Division A.   Apr. 2, 1951.

No. 37903 (51 So. (2d) 736)

L. D. Pittman and R. C. Russell, for appellant.

O. O. Weathersby, R. S. Tullos, and J. D. Martin, for appellees.

Kyle, J.

This suit was filed in the name of Virgil Sullivan, a non compos mentis, by Mrs. Bessie Tullos, his legal guardian, as complainant, against Mrs. Leona Sullivan Nobles and others, as defendants, in the chancery court of Smith County, for the purposes of cancelling two deeds of conveyance of approximately 62 acres of land in Smith County alleged to have been purchased by Mrs. Eliza Sullivan, the mother and legal guardian of complainant, now deceased, with funds belonging to the complainant, and for the purpose of establishing complainant's title to said land.

From a decree sustaining the defendants' special plea in bar of the suit and dismissing the bill of complaint the complainant prosecutes this appeal.

The facts disclosed by the record are substantially as follows:

Virgil Sullivan, who is also known as William V. Sullivan, is a non compos mentis and has been confined in the Mississippi State Hospital for the insane since 1906. His mother, Mrs. Eliza Sullivan, was duly appointed his legal guardian in 1906. Virgil Sullivan, at the time he was adjudicated non compos mentis, was the owner of a 160-acre tract of land in Smith County. On May 2,

1906, upon petition of Mrs. Eliza Sullivan, the legal guardian, a decree was entered by the chancery court of Smith County authorizing the sale of the land owned by the ward. The sale was made immediately thereafter and was duly confirmed by the chancellor. The proceeds derived from the sale of the land, after the payment of the expenses incurred in making the sale, amounted to approximately $1,800, which was paid over to Mrs. Eliza Sullivan as guardian. The money was deposited by Mrs. Sullivan in the bank at Magee, and some time during the month of October 1907 the money was withdrawn by Mrs. Sullivan from the bank and was used by her in the payment of the purchase price of the 62-acre tract of land involved in this suit, which Mrs. Sullivan purchased from T. H. Luckey and his wife. The title to the property was conveyed to Mrs. Eliza Sullivan in her own name, and not as legal guardian of Virgil Sullivan.

Immediately after purchasing the land Mrs. Sullivan moved on the land and used and occupied the same as her homestead and as her own property to the exclusion of the ward, and in 1919 Mrs. Sullivan, who in the meantime had married one J. B. Butler, conveyed the land to her two sons, Melvin M. Sullivan and Tullos Sullivan. During the time Mrs. Sullivan owned the land she exercised every right of individual ownership over the land. In 1922 Melvin M. Sullivan conveyed his undivided one-half interest in the land to Tullos Sullivan, and thereafter Tullos Sullivan resided on the land with his wife and children until his death in 1937. After the death of Tullos Sullivan his widow, Mrs. Leona Sullivan, and their children continued to reside on the land and to occupy the same as their homestead, claiming the same as their own. Mrs. Leona Sullivan, about 1946, married one Gatha Nobles. Tullos Sullivan, during his lifetime made valuable improvements on the land, and according to the testimony of witnesses, the reasonable value of the property at the time of the trial of this case was $7,000 or $8,000. The chancellor found as a fact that both Melvin

M. Sullivan and Tullos Sullivan had personal knowledge of the fact that the land had been purchased by their mother with the money belonging to their insane brother, and that there was no question to be determined as to the rights of innocent purchasers.

Mrs. Eliza Sullivan died in 1934. No administrator was ever appointed to administer her estate. No accounts were ever filed by her as legal guardian of the estate of Virgil Sullivan, N. C. M.

The complainant in his bill of complaint alleged in general the facts as stated above. The defendants in their answer admitted many of the facts alleged in the bill of complaint, but denied specifically that any of the funds belonging to the complainant were used by Mrs. Eliza Sullivan in the purchase of the 62-acre tract of land. The defendants in their answer also denied that Melvin Sullivan and Tullos Sullivan at the time they acquired title to the land from their mother knew that complainant's money had been used by Mrs. Eliza Sullivan in the purchase of the land, and they denied that Melvin Sullivan and Tullos Sullivan were not bona fide purchasers of the land for value without notice of the facts alleged in the bill of complaint as to the use of complainant's money in the payment of the purchase price of the land. The defendants filed with their answer a special plea in bar of the suit and a general demurrer to the bill of complaint.

In their special plea in bar of complainant's suit the defendants alleged that more than 31 years had elapsed since the complainant's cause of action accrued, and that the suit could not be maintained because of the bar of the statute of limitations.

The chancellor after hearing the testimony incorporated in the record his findings of facts which were substantially as stated above, and upon the record thus made the chancellor held that the complainant's bill for relief came within the provisions of Section 746, Code of 1942, and that the suit was barred by the statute of limitations;

and the chancellor entered a decree sustaining the defendant's special plea in bar of the suit and dismissing the bill of complaint.

Section 746, Code of 1942, is as follows: "Limitation of express trusts.—Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after; saving, however, to all persons under disability of infancy and unsoundness of mind, the like period of time after such disability shall be removed; but the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one years."

Appellant's attorneys in their brief contend that the case made by the pleadings and proof is a case of an express trust, and that the above mentioned statute imposes no bar against the court granting the relief prayed for, for the reason that no final account was ever filed by or on behalf of Mrs. Eliza Sullivan as legal guardian of the complainant and that the trust has never been legally terminated. And in support of their contention appellant's attorneys cite the cases of Nunnery, Administrator, v. Day, 64 Miss. 457, 1 So. 636, and Dunn v. Clingham, 93 Miss. 310, 47 So. 503.

In those cases the court held that a legal guardianship is a direct technical trust and that in a suit by the ward against the guardian and the sureties on the guardian's bond for money or other property belonging to the ward's estate the statute of limitations does not run against the ward until the guardian has made a final settlement of his accounts.

But the case that we now have before us is not a suit for the enforcement of an express trust. The bill of complaint filed in this cause is a bill to establish an implied, resulting, or constructive trust, and the principles which must be applied are the principles relating to implied, resulting, or constructive trusts.

█ █ Where the purchaser of property buys it with the money of another, the trust thereby created in favor of the party whose money is thus used is an implied, resulting or constructive trust, and not an express trust, and is subject to the statute of limitations. Brown v. Doe ex dem. Weast's Heirs, 7 How., Miss., 181; Murdock v. Hughes, 7 Smedes & M., Miss., 219; Cooper v. Cooper, 61 Miss. 676; Rimmer v. Austin, 191 Miss. 664, 4 So. (2d) 224.

In the case of Cooper v. Cooper, supra, the court, in discussing the effect of the statute of limitations in a case of this kind said: "The statute never runs except against a cause of action, and a cause of action implies not only the existence of a right but such a denial of it, either actual or constructive, as puts the party entitled under a necessity to act if he would preserve it. An open, subsisting, and acknowledged trust is not within the operation of the statute . . . But implied, resulting and constructive trusts are subject to the operation of the statute, which begins to run from the time the wrong is committed by which the party becomes chargeable by legal implication. The very nature of such trusts excludes the idea that they are acknowledged, open and active, and implies that the parties stand in such adverse relations to each other as to require him who asserts the trust to become an actor if he would establish it. They either arise out of an intention which the law imputes to the party to do equity if seasonably called upon, or are thrust upon him at the instance of the injured party contrary to his known intention and will. Mr. Perry assigns to the head of resulting trusts cases 'where a person standing in a fiduciary relation uses fiduciary funds to purchase property and takes the title in his own name' (Perry on Trusts, Section 125), though it is obvious that where the party so purchasing intends at the time to hold for himself, the case partakes also of the nature of constructive trusts, which are said to arise

out of either actual or constructive fraud. Pomeroy's Equity Jurisprudence, Sections 148, 1030 et seq.''

"When Cooper, the executor, by the use of a debt which he held in that capacity, purchased the Hemphill lands in February, 1868, he became chargeable in respect to them as a trustee for the beneficiaries of that fund, but it was upon a resulting or constructive trust, and not an express one. He did not become a trustee of the land in the proper and technical sense of the term, but only became liable to be made a trustee by decree of a court of equity. This liability arose upon the instant of the transaction, and upon the same instant the statute began to run in his favor. More than ten years elapsed before any attempt was made to charge him. The exceptions filed by appellants on the 5th of July, 1882, constitute the first effort to do so, though the result would be the same if we take the petition filed June 14, 1881, as the initiation of proceedings for that purpose. The statute appears to us to be an insurmountable difficulty. Murdock v. Hughes, 7 S. [Smedes] & M. 219; Prewett v. Buckingham, 28 Miss. 92; Watts v. Gunn, 53 Ib. [Miss.] 502; Wilmerding v. Russ, 33 Conn. 67; Wood on Limitations, Sections 200, 201; Perry on Trusts, Sections 124-127, 166, 854-866.''

If this were a suit by the ward against Mrs. Eliza Sullivan, the legal guardian, or her legal representatives, and the sureties on her guardian's bond, to compel an accounting of the funds coming into her hands as assets of his estate, and for a decree against the guardian and the sureties on her bond for the amounts found to be due, or a suit to recover land or other tangible property owned by the ward and belonging to his estate, the suit would be a suit to enforce an express trust, and the statute of limitations could not be invoked as a defense against such suit because the guardianship has never been legally terminated. Nunnery, Administrator, v. Day, supra; Dunn v. Clinghan, supra. If the land involved in this controversy were land which had been

owned by Virgil Sullivan at the time he was adjudicated non compos mentis, or land which had been purchased for him and title to which had been taken in his name after he became insane, the possession of the guardian would have been the possession of an express trustee, and neither her possession of the land nor the possession of her voluntary grantee would have been sufficient to deprive the owner of his title. But the record in this case shows that Virgil Sullivan was never the owner of the 62-acre tract of land involved in this suit. The land was purchased by Mrs. Eliza Sullivan from T. H. Luckey and his wife during the year 1907 and the deed of conveyance was made to her, although the purchase price was paid by her out of funds belonging to her ward; and according to the holding of the court in the Cooper case Mrs. Sullivan, after the purchase of the land in 1907 with funds of the ward, "was not trustee of the land in any legal sense, but liable to be made such at the election of a proper party by decree of a proper court."

The holding of the court in the Cooper case means that the action of Mrs. Eliza Sullivan in using her ward's money for the payment of the purchase price of the land which she purchased in her own name and for her own use and benefit did not create an express trust in favor of the ward as to the land thus purchased by her. But when she purchased the land under such circumstances and used the ward's money to pay for the same, she acquired title to the land subject to an implied or constructive trust in favor of the ward whose money had been used to pay the purchase price. She did not become a trustee of the land in the proper and technical sense of the term, but only became liable to be made a trustee by decree of a court of equity. And, as stated in the Cooper case, "This liability arose upon the instant of the transaction, and upon the same instant the statute began to run in her favor."

In discussing implied or constructive trusts in the case of Rimmer v. Austin, 191 Miss. 664, 4 So. (2d) 224, 225,

Judge Griffith, speaking for the Court, said: "We have here not an express trust, nor even a resulting trust. At most, it was an implied or a constructive trust, and the rule is that no repudiation of an implied or constructive trust is necessary to set the statute of limitations in operation. In such cases, in the absence of fraud and concealment, the statute runs from the time when the act was done by which the party became chargeable as trustee by implication, which is to say, from the time when the cestui que trust could have enforced his right by suit. 34 Am. Jur. p. 143. Trusts of the latter class are not created by agreement, nor are they the results of agreement, express or implied; they are products of conduct, in which it is not necessary that the cestui que trust may have had then or theretofore any part or knowledge whatever, but in respect to which the law imputes to the actor then and there an intention, and in consequence the obligation to do equity when called on so to do, and this whether he had any such intention at the time or not. Hence the rule that as to implied and constructive trusts, the statute begins to run from the time the act or acts were committed by which the actor became chargeable. See Cooper v. Cooper, 61 Miss. 676, 679, 696."

In view of the language of the statute, which provides that "the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one years", and the decisions of our own courts, which have been referred to above, we think that the conclusions arrived at by the chancellor were correct, and that the decree of the lower court should be affirmed.

Affirmed.