OLD LADIES HOME ASSOCIATION, et al. *v.* HALL.

Division B. May 28, 1951.

No. 38003 (52 So. (2d) 650)

On Suggestion of Error, Sept. 24, 1951

(67)

Harold Cox and Green, Green & Cheney, and R. P. Sugg, for appellants.

W. B. Meek and Fant & Bush, for appellee.

**Ethridge, C.**

The interpretation of a contract to devise real property in return for personal services and expenditures is here involved. Also these questions arise: Whether the bill of complaint charged a positive and unconditional re-

pudiation by the promisor; and if so, whether the anticipatory repudiation of such contract by the promisor, after performance had begun, started the statute of limitations running, or, where the promisee elected to consider the contract still alive and waited until the promisor's death, whether the limitation period began running at that time.

Appellee, A. D. Hall, filed his bill of complaint in the Chancery Court of Webster County, Mississippi, against appellants, Old Ladies Home Association, Mississippi Baptist Orphanage, and C. P. Fortner, executor of the estate of Mrs. Susie Jarman Douglas, deceased. Also made defendants were certain legatees and devisees of Mrs. Douglas, but these parties have taken no appeal. This appeal is from an order of the chancery court overruling special and general demurrers of appellants to the complaint. For that reason, the following is a summary of the allegations of the bill of complaint.

Prior to October 7, 1938, Mrs. Susie Jarman Douglas, an elderly widow in her late seventies, approached complainant with the proposition that he, his wife and child, move into her home to live with her until her death, and furnish her room and board, maintain the premises, pay taxes, etc., and that in return for such services, she would devise to complainant her residence and the lots appurtenant to it. On October 5, 1938, complainant and his family moved into the home of Mrs. Douglas in Eupora, in Webster County, and on October 7 complainant and Mrs. Douglas executed a written contract to carry out this agreement. The contract was prepared by Mrs. Douglas' attorney, and was made an exhibit to the bill. The homestead property consisted of four lots in Eupora, but subsequent to the contract Mrs. Douglas sold one lot and part of another to Phillips, and complainant makes no claim to that.

Complainant charged that, in fulfillment of the contract, he and his family lived in Mrs. Douglas' residence, that he paid taxes on it and repaired it from time to time, and furnished her and her foster daughter with suitable and

acceptable board and food, heat and lights and other comforts and necessities, until Thanksgiving Day of November, 1943, at which time Mrs. Douglas became enraged about complainant's failure to have butter on the table, and ordered complainant and his family to get out of the house. It was averred that Mrs. Douglas at all times kept two loaded pistols and a dagger in her home, and threatened physical violence to complainant's infant son and that complainant feared for the safety of himself and his family. Complainant told her that he wanted to remain in the home and carry out his part of the contract, as he had previously done, and as he thereafter remained ready, willing and able to do, but Mrs. Douglas drove them from her home and refused complainant's services. Complainant averred that he had performed all of his obligations under the contract, including the furnishing of good and acceptable board and room, making repairs, paying of taxes, kind treatment of Mrs. Douglas, transporting her in complainant's car for the purpose of seeing her relatives and the tenants on her farms, waiting on her during illness, and caring for her in numerous other respects. The bill stated that butter became scarce in Eupora during World War II, and that for several days prior to Thanksgiving Day of 1943, complainant was unable to procure butter for the table.

The complaint then charged that on December 30, 1948, Mrs. Douglas executed a will which attempted to revoke her contract with complainant to devise the stated property to him, and that complainant was unaware of the will and its contents until after her death in 1950, when it was probated in common form in May, 1950. The complaint stated that the failure of Mrs. Douglas to devise the property to complainant was in violaion of her contract with him and "that he had never in any manner been informed that the testatrix, by the will, or otherwise, had attempted to void her contract to devise said property to him during her lifetime, she having informed a neighbor of her obligation to him under said contract after

he and his family were forced by her to remove from the home . . ." When complainant moved into Mrs. Douglas' home in 1938, and until the time she drove him away in November, 1943, he was employed as a vocational agricultural teacher in the Eupora Special Consolidated School District, and as such he was entitled to a rent-free home. Complainant gave up this rent-free home in reliance upon his contract with Mrs. Douglas.

The will of Mrs. Douglas recited in part as follows: "Mr. A. D. Hall and his wife, Mrs. Fannie Hall, having removed from my house, in the Town of Eupora, and having ceased to carry into effect and operation their written contract between them and me, I am not under any obligation to them, and for the reason that they have removed from my home and ceased to perform their contract with me, I have made no provision in this will for them, the written contract between them and me having been terminated by their removal from my home."

Under that will, appellants, Old Ladies Home Association and Mississippi Baptist Orphanage, would receive the homestead property under the residuary clause.

The bill of complaint therefore prayed that appellant Fortner, the executor, should be required to specifically perform the contract of October 7, 1938. In the event relief under the contract is denied, complainant prayed in the alternative in quantum meruit for the reasonable value of his services and expenditures for Mrs. Douglas, and for damages for breach of contract in the amount of $10,000.00.

The contract between Mrs. Douglas and appellee, dated October 7, 1938, was made an exhibit to the bill. The parties to it were Mrs. Douglas and appellee. In two "whereas" clauses it recited that Mrs. Douglas was the owner of a certain home in Eupora and desired "to be free of the burden of housekeeping and maintaining said home and incurring the expenses incident thereto for herself and her daughter, Mary Douglas," and that appellee had agreed to bear all expenses of maintaining the

home, furnishing to Mrs. Douglas and her daughter, Mary, "suitable and acceptable board and food", and other comforts and necessities, to pay taxes and keep up the property during the lifetime of Mrs. Douglas, and that appellee and his wife were to treat her as a mother and she to treat appellee and his wife as a son and daughter. The contract then provides:

"Therefore in consideration of the premises the said Mrs. Susie Jarmon Douglas agrees to devise by a last will and testament said property to the said A. D. Hall, and in event the said A. D. Hall does not survive her then to his wife Fannie O. Hall;

"It is further agreed and understood however that the said Mary Douglas, after the death of the said Mrs. Susie Jarman Douglas, shall likewise have a home in said residence so long as she remains single, and thereafter at the option of the said A. D. Hall and his wife, Fannie O. Hall in event of the marriage of the said Mary Douglas.

"It is further agreed and understood however that in the event of the death of A. D. Hall before the demise of the said Mrs. Susie Jarmon Douglas, and that Mrs. Fannie O. Hall, his wife, is hereby given the option and right to continue and fulfill the conditions of this contract and agreement, and to be so provided for in the last will and testament of the said Mrs. Susie Jarmon Douglas.

"It is further agreed and understood that in the event the title to said property after the death of the said Mrs. Susie Jarmon Douglas does not vest by the last will and testament of the said Mrs. Susie Jarmon in A. D. Hall and Mrs. Fannie O. Hall, then the estate of the said Mrs. Susie Jarmon Douglas shall reimburse the said A. D. Hall for all taxes and improvements that he may have expended under and on account of this agreement.

"It is further agreed and understood that on the death of the said Mrs. Susie Jarmon Douglas that all of the household and other furniture and personal effect of said Mrs. Susie Jarmon Douglas shall be delivered to and be

the property of the said Mary Douglas, as she may see fit and proper.

"It is further understood and agreed that the said A. D. Hall and his wife, Mrs. Fannie O. Hall shall control and manage said home, household affairs, and occupation thereof as if the same was their home in fact, during the lifetime of the said Mrs. Susie Jarmon Douglas, and thereafter as above provided, unless unforseen conditions may arise to change the effect of this instrument and the disposition of said property by the last will and testament of Mrs. Susie Jarmon Douglas.

"It is the intention of the parties hereto that this contract and agreement shall bear a liberal construction for the protection of the interests of all parties hereto or affected hereby.

"It is further agreed and understood that Mrs. Susie Jarmon Douglas and her foster daughter Mary Douglas, hereinbefore referred to as her daughter, are to retain and occupy the East half or side of the house they now occupy, during the natural life of the said Mrs. Susie Jarmon Douglas, and thereafter by Mary Douglas subject to the provisions of this contract and agreement.

"It is further agreed and understood that in the event title to said property does not hereafter vest in A. D. Hall or his wife, Mrs. Fannie O. Hall, on the death of Mrs. Susie Jarmon Douglas, then the said A. D. Hall is to account to the estate of the said Mrs. Susie Jarmon Douglas for a reasonable rent for the part of the house occupied by him and his wife under the provisions of this contract, and the said A. D. Hall shall be reimbursed by the estate of Mrs. Susie Jarmon Douglas for such taxes and costs of improvements that he may have paid during the existence of this contract and agreement."

To the bill of complaint the Old Ladies Home Association filed an answer, cross-bill, and general and special demurrers. The former averred that there was no equity on the face of the bill, and that relief if any, was barred by the six-year statute of limitations. The special de-

murrer pleaded failure of complainant to make a proper tender of the amount he owed the estate. The Mississippi Baptist Orphanage filed a special demurrer, setting up a non-joinder of Mrs. Fannie O. Hall, wife of appellee, as a necessary party complainant, no tender, and the statute of limitations. Fortner, executor, filed a similar special demurrer, along with cross-bill and answer. The chancellor overruled these general and special demurrers, and allowed an interlocutory appeal to this Court because "it will settle all of the controlling principles in this case . . ."

Appellants first urge that appellee's action is barred by the six-year statute of limitations. Miss. Code 1942, Sec. 722. They say that it accrued on Thanksgiving Day, November 25, 1943, when the complaint alleged that Mrs. Douglas ordered him to get out of the house, as a result of which appellee and family left the home. Appellants say that at that time appellee was in possession of the property, maintaining it, and paying taxes thereon, and that appellee was then ousted from those possessory rights. The present suit was filed on May 15, 1950. There are two reasons why this argument is not applicable here. First, the bill of complaint did not allege positively that Mrs. Douglas repudiated her obligation under the contract to devise the property. It merely alleged that she ordered them to get out of the house. She was repudiating benefits for herself under the contract, but not necessarily obligations. The general rule is that "in order to give rise to an anticipatory breach of contract the defendant's refusal to perform must have been positive and unconditional." 5 Williston and Thompson, Contracts, (Rev. Ed. 1937), Sec. 1324; 12 Am. Jur., Contracts, Sec. 393; R. T. Clark & Co. v. Miller, 1929, 154 Miss. 233, 122 So. 475; Mobley v. New York Life Ins. Co., 5 Cir., 74 F. (2d) 588, certiorari granted 294 U. S. 705, 55 S. Ct. 640, 79 L. Ed. 1240, affirmed in 1935, 295 U. S. 632, 55 S. Ct. 876, 79 L. Ed. 1621.

Secondly, assuming the bill charged a complete repudiation by Mrs. Douglas, ▮▮ where there has been a renunciation of a contract before time for performance by one party, the other party has a right to pursue any one of three remedies: To rescind the contract; to treat it as still binding and wait until the time arrives for its performance by the promisor, and at such time to bring an action on the contract; and lastly, to treat the renunciation as an immediate breach and sue at once for any damages which he may have sustained. 17 C. J. S. Contracts, Sec. 472, pp. 974-075; 12 Am. Jur., Contracts, Sec. 392.

Accordingly ▮▮ the general rule allows the injured promisee, if he elects after breach of the contract to keep it alive, to compute the statutory period of limitations, not from the time of the breach by anticipatory repudiation, but from the time when ultimate payment or performance was promised, the death of the promisor. Some authorities criticize this rule. 6 Williston and Thompson, Contracts, (rev. ed. 1938), Sec. 2027. It is said that after performance has begun and prevention of further performance by the promisee takes place, there is an actual breach; that it is illogical and fictitious to allow the injured party an election not to call a breach something that is a breach, or to continue a contract when the wrongdoer will not let him continue it. One objection advanced to the election theory is that continued performance will allow the promisee to enhance the damages. However, that does not exist in this contract, bcause the promisor is only repudiating benefits to herself, the services of appellee, and these services cannot be rendered anyway without the promisor's consent. ▮▮ The performance by Mrs. Douglas was to be the devising of the property to appellee at her death. This type of contract is enforceable. Johnston v. Tomme, 1945, 199 Miss. 337, 24 So. (2d) 730.

Moreover, there is always the possibility that a repudiator will withdraw her repudiation and leave the prop-

erty at death by her will. This can not be ascertained until death occurs. It is doubtful until that time. The general rule does not require the promisee to wait until the promisor's death. Jackson Lumber Co. v. Moseley, 1942, 193 Miss. 804, 818, 11 So. (2d) 199. It recognizes the logic and fairness of a suit for breach by anticipatory repudiation, 5 Williston and Thompson, ibid, Secs. 1296-1337A, but it says that you do not have to consider it a breach at that time. You can wait if you wish until the time for performance, the promisor's death.

This same principle is well stated in A. L. I., Restatement of Contracts (1932), Sec. 322: "If no action on an anticipatory breach is brought before the time fixed by the contract for the beginning of performance by the party who has committed such a breach, the period of the Statute of Limitations begins to run only from the time so fixed by the contract.

"Comment: a. The party injured is given an election whether he will regard an anticipatory repudiation as final, though he cannot recover unnecessarily enhanced damages incurred by continuing performance in disregard of repudiation. His failure to regard repudiation as final is advantageous to the wrong-doer, since he is thus given an enlarged opportunity of nullifying the effect of the repudiation under Sec. 319, and therefore should not work prejudice to the injured party in the calculation of the period of the Statute of Limitations."

 The general rule is that the statute of limitations begins to run as soon as there is a cause of action. The application of the anticipatory breach and election doctrines to a contract to devise in return for personal services is a practical adaptation of this rule to the respective equities of the parties. Its effect is to prohibit the wrongdoer from benefiting by his own wrong. It does not allow the promisee to enhance his own damages by continuing performance in disregard of the repudiation. He has contracted for specific things, the house and lot. Another practical difficulty in requiring a suit at

the time of the anticipatory breach in a contract of this type is that in most instances it would be impossible to estimate with reasonable accuracy the promisee's damages prior to the death of the promisor. The value of the real property at the time of performance could not be estimated until that time. The property might have depreciated or appreciated greatly before Mrs. Douglas' death. See Ellis v. Berry, 1926, 145 Miss. 652, 671-674, 110 So. 211.

Moreover, an immediate action based upon the anticipatory breach is a different cause of action from that based on the non-performance at the contract time. In other words, the threat to break the contract and the non-performance of the contractual duty are two different causes of action. The limitation period does not begin to run on the latter until the cause of action accrues. The duty of performance continues in spite of repudiation. Ballantine, Anticipatory Breach and the Enforcement of Contractual Duties, 22 Mich. L. Rev. 329 (1924), Selected Readings on the Law of Contracts, 1072, 1087; Limburg, Anticipatory Repudiation of Contracts, 10 Cornell L. Q. 135 (1925), Selected Readings, 1090, 1115. The election theory gives the injured party a choice between these distinct causes of action. Here appellee has elected to sue for Mrs. Douglas' non-performance of her duty at the contract time, and the limitation period began to run from that date.

Somewhat similar in facts and result is Gild v. Killeen, 1934, 44 Ariz. 29, 33 P (2d) 595, 94 A. L. R. 448. See also Annotations, 94 A. L. R. 455 (1935), 69 A. L. R. 14, 166. In earlier cases this Court has recognized the right to sue for breach by anticipatory repudiation. Carter v. Witherspoon, 1929, 156 Miss. 597, 126 So. 388; Bonds v. Thos. J. Lipton Co., 1904, 85 Miss. 209, 37 So. 805; Bolling v. Red Snapper Sauce Co., 1910, 97 Miss. 785, 53 So. 394. In R. T. Clark & Co. v. Miller, 1929, 154 Miss. 233, 258-259, 122 So. 475, it was held that there was not an unconditional breach, but it was said that the

promisee had an election as to when to sue if there is an anticipatory breach. See also on election, Reed Bros. v. Bluff City Motor Co., 1925, 139 Miss. 441, 104 So. 161; Sovereign Camp W. O. W. v. Penn, 1935, 173 Miss. 93, 96, 161 So. 681. Somewhat analogous to the present problem is Callender v. Lamar Life Insurance Co., 1938, 182 Miss. 609, 182 So. 119, 122, in which plaintiff, beneficiary under a life insurance policy of her husband sued to recover its value after his death. Defendant pleaded the six-year statute of limitations, that in June, 1931 it had denied liability under the contract by advising insured that his policy had lapsed for non-payment of premium, and this suit was brought in September, 1937. Defendant pleaded that the contract, if breached at all, was breached in 1931, and that the statute of limitations barred the suit. The Court held that although plaintiff's insured could have treated defendant's action in 1931 as an anticipatory breach, plaintiff had an election to treat the policy as still in force and wait until it was payable. This election having been made ''as to the effect of the six year statute of limitations, it clearly did not begin to run until that time.'' Although the Callender case involved a different kind of contract from the present one, the result is the same. Hence, appellee having elected to wait for suit until the death of Mrs. Douglas, the period of the statute of limitations began to run only from that time.

█ █ Appellants also say that Mrs. Fannie O. Hall, wife of appellee, was a necessary party to this suit. However, she was not a party to the contract, and any benefits under it which appellee would obtain would benefit her only incidentally. The contract provided that the property was to be devised to appellee alone. The contingency stated in it, of appellee predeceasing his wife and Mrs. Douglas, never occurred. And the reference to this contingency in the contract indicates the intention of the parties to it, to give her rights under it only on the happening of the specified contingency.

Appellee made in his bill an adequate tender under the circumstances. He offered and tendered "to do in such accounting whatever equity may require, and to be charged by way of set-off with whatever should be found by the court to be due by him to the said estate * * *." Even assuming the correctness of appellant's argument as to the rent clause, it is still apparent that appellee had no means of ascertaining any definite sum to be tendered. See Griffith, Mississippi, Chancery Practice (2d Ed. 1950), Sec. 523.

Appellants say that the chancellor erred in overruling the general demurrer of the Old Ladies Home Association, and that the bill does not charge that appellee, after being driven out by Mrs. Douglas, ever offered to continue to perform his contract. However, the bill adequately charged that appellee then informed her that he wanted to carry out his part of the contract "which he was then ready and thereafter remained ready and willing and able to do thereafter * * *." Moreover, where performance of a contract is rendered impossible by one of the parties, the other party is excused from further offer of performance. 12 Am. Jur., Contracts, Sec. 386.

We do not think that the contract provided its own measure of damages for breach by Mrs. Douglas in the paragraph stating that Mrs. Douglas would reimburse Hall for taxes and improvements which he may have expended. This paragraph, together with the last paragraph in the contract, refers, we think, to a situation where title might fail to vest in appellee because of some unforeseen contingency beyond the control of the parties. This interpretation is strengthened by the paragraph providing that Hall and his wife should control and manage the home during and after the lifetime of Mrs. Douglas "unless unforeseen conditions may arise to change the effect of this instrument * * *." What these unforeseen conditions might have been is not relevant because they did not occur prior to her death.

The principal purpose of the contract was for appellee to perform his services, and Mrs. Douglas to devise him the property. The subsidiary nature of these two paragraphs tend to confirm their contingent, subsidiary purpose.

Appellants also argue that the quoted recitation in the will of Mrs. Douglas, to the effect that appellee had breached his contract with her, was an exhibit to the complaint and a part of it, and that those ex parte statements constituted factual averments on the general demurrer. However, ▮▮ the general rule that the recitals in exhibits control an inconsistent averment of a bill, does not apply where the purpose of the bill is to show that the recitals of the exhibit, here the will, are in fact, not true. McKinney v. Adams, 1909, 95 Miss. 832, 851-853, 50 So. 474; Griffith, Mississippi Chancery Practice (2d ed. 1950), Sec. 192.

The chancellor correctly overruled the general and special demurrers of appellants, his decree is affirmed, and the case remanded for further hearing on any factual issues which may exist and a final decree on the merits.

Affirmed and remanded.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the cause is affirmed and remanded.

On Suggestion of Error.

**Holmes, C.**

Appellants have filed and urged with much seriousness and resourcefulness a suggestion of error in this case, and in response thereto, we have carefully re-examined the entire record in the cause and the legal questions presented, and we are of the opinion that we are not warranted in departing from the legal conclusions announced in our original opinion.

In order to clarify our position, however, in remanding the case, and in order that there may be no misconception as to the further procedure of the cause under the pleadings as they now are or as they may be amended and the proof introduced thereunder, we are deleting from our original opinion the concluding paragraph thereof reading as follows: ''The chancellor * * * overruled the general and special demurrers of appellants, his decree is affirmed, and the case remanded for further hearing on any factual issues which may exist and a final decree on the merits.'' [52 So. (2d) 650, 657.]

It was not meant by the court to adjudicate on this appeal any factual issues further than to hold that the facts alleged in the bill, taken as true on the demurrers, were sufficient to withstand the demurrers. Accordingly, the following is substituted in the opinion in lieu of the deleted paragraph: ''The decree of the Chancellor in overruling the demurrers is affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion.''

Opinion modified and suggestion of error overruled.

PER CURIAM.

The above opinion is adopted as the opinion of the court, and for the reasons therein indicated, the original opinion is modified as hereinabove set forth, and the Suggestion of Error is overruled.