RANKIN, et al. *v.* MARK, et al.

No. 41465 May 16, 1960 120 So. 2d 435

*Crisler, Crisler & Bowling,* Jackson; *Sebe Dale, Jr., Rawls & Hathorn,* Columbia; *Forrest B. Jackson,* Jackson, for appellants.

*Breed O. Mounger,* Tylertown; *Roach & Jones,* McComb, for appellees.

LEE, J.

Sol Mark and wife, by their original and amended bills of complaint, sought to cancel a mineral conveyance from Albert Buck Mark to H. L. Rankin of date of November 7, 1945, on the SE¼ of the NE¼ of Section 8, Township 1 North, Range 13 East, insofar as such conveyance pertained to their title thereto. It was charged that the grantors and the grantee in that instrument perpetrated a fraud upon the complainants. The Humble Oil & Refining Company, a corporation, as the assignee of a mineral lease thereon from H. L. Rankin, was made a necessary but nominal defendant because the bill averred that it was a bona fide purchaser for value without notice. The defendant H. L. Rankin, in his answer, denied all of the material allegations of the bill, pled specially Sections 709, 710, and 746, Code of 1942 Recompiled, the ten-year statutes of limitation, in bar of the action, and made his answer a cross-bill in which he prayed to be declared the true and lawful owner of the undivided one-half mineral interest in said land, and that the claim of the cross-defandants, Sol and Flossie Mark, should be cancelled as a cloud on his title thereto. The separate answer of Albert Buck Mark denied all of the material allegations of the bills and also pled Sections 709, 710, and 746, Code of 1942, Recompiled, the ten-year statutes of limitations, in bar of the action.

At the conclusion of the evidence, the court made no written finding of law or fact, but rendered a decree to the effect that Rankin obtained his title in fraud of the complainants' rights and without any consideration; that the mineral deed in question was taken by Rankin as additional security for a deed of trust; and that when said deed of trust was satisfied and cancelled, the mineral deed should have also been marked satisfied and

cancelled. Consequently the decree awarded the relief prayed for in the complainants' bills. From that decree, the defendants, Rankin and Albert Buck Mark, appealed.

J. P. McRaney owned 270 acres of land which included the 40 acres involved in this controversy. The pertinent deed records of Walthall County disclosed the following: On November 7, 1945, he and his wife conveyed this entire tract to Albert Buck Mark, reserving to themselves an undivided one-half interest in the oil, gas and other minerals. This instrument was recorded in Conveyance Book 54 at page 227. On the same date, Albert Buck Mark and wife, Corine, executed and delivered to H. L. Rankin two instruments: (1) For a recited $10 and other considerations, they conveyed and warranted to him an undivided one-half interest in the oil, gas and other minerals on and under the entire 270 acres, which instrument was recorded in Conveyance Book 52, page 490; and (2) They executed to him a deed of trust on the entire tract to secure the payment of $2,900, due October 1, 1946, which instrument was recorded in Trust Deed Book 38 at pages 115 and 116. All three of the above-mentioned instruments were filed for record with the chancery clerk on November 8, 1945, and were duly recorded in the books as above stated.

On December 21, 1946, H. L. Rankin filed his application, in accordance with law, for ad valorem tax exemption on 135 mineral acres, being for his one-half of the 270-acre tract, which he obtained by reason of the conveyance from Albert Buck Mark and wife to him on November 7, 1945.

Albert Mark, Jr. and wife, Corine, on October 27, 1948, for a recited consideration of $1,000, conveyed and warranted to Sol Mark the forty acres of land in question, which instrument was duly filed and recorded on the same day. (There was no mention whatever therein as to oil, gas and other minerals.)

On October 14, 1949, Sol Mark and wife, Flossie, executed and delivered to H. L. Rankin a deed of trust on the

same forty acres, which they had obtained from Albert Mark, Jr., et ux, to secure the payment of $606.10, due January 1, 1950. (There was no mention of oil, gas or other mineral rights.)

Sol Mark and wife, Flossie, on May 14, 1952, executed a deed of trust to the Federal Land Bank of New Orleans to secure an indebtedness of $650. The instrument recited that it was subject to a mineral deed, recorded in Conveyance Book 52, page 490, and to a prior reservation of minerals, contained in a deed recorded in Book 54, page 227. (These two exceptions were in fact the mineral deed from Albert Buck Mark and wife to H. L. Rankin, and the reservation by J. P. McRaney of one-half of the minerals in his deed to Albert Buck Mark which have been mentioned above.)

On November 15, 1952, Albert Buck Mark, a widower, executed a deed of trust to the Federal Land Bank of New Orleans to secure the payment of $1,000, which instrument was made ''subject to mineral deed recorded in Conveyance Book 52, page 490, and to prior reservations of minerals contained in deed recorded in Book 54, page 227.'' (These instruments were H. L. Rankin's mineral deed from Albert Buck Mark, et ux, and J. P. McRaney's reservation of one-half of the minerals at the time of the sale of the land.)

During the latter part of 1957 or the first part of 1958, oil was discovered within about two miles of this land. On January 28, 1958, Albert Buck Mark, Sol Mark, et ux, and four other sets of complainants, filed separate suits in the Chancery Court of Walthall County against H. L. Rankin and the Humble Oil and Refining Company. The allegations of the bills in the other cases were substantially the same as those in the present cause. Thereafter, on May 19, 1958, on motion of Albert Buck Mark, his case was dismissed without prejudice.

J. P. McRaney testified that Albert Buck Mark and Sol Mark, brothers, approached him about the purchase of this tract of land; that he agreed to sell it to them,

but he would retain one-half of the minerals; that the price was to be $3,800; that Sol was to get the forty acres where he lived—the land here involved—and the other half of the minerals thereunder; that he had discussed the matter with Sol and Albert Buck several times and both of them had agreed to it; that the deed, which he and his wife made to Albert Buck Mark, was delivered in H. L. Rankin's office in Columbia on November 7, 1945; that he, his wife, Albert Buck Mark and his wife, Sol Mark and H. L. Rankin were present at the time; that the agreement between Sol and Albert Buck with reference to the land and minerals whereby Sol was getting forty acres and half of the minerals was discussed. When asked what he, the witness, said on that occasion, he replied: ''I don't remember just what was said but when I started to leave I turned around and asked Sol if he was satisfied with the agreement that was taking place and he said he was.'' He further stated that he made a deed to Albert Buck because he and Sol wanted it that way. He was asked: ''When was Sol Mark to get his deed from your understanding?'', and he replied: ''That day'' And then he was asked, ''November 7, 1945?'', and his answer was ''Yes, sir.'' (It is singular indeed that McRaney claimed to be so solicitous of Sol, and yet he never thereafter inquired of Sol as to whether he got a deed, or whether it conformed to his understanding of the agreement. It was not until either December 1957 or January 1958, when he happened to see Sol in the courthouse at Tylertown, that he even inquired about it.) One fact which the evidence of this witness did establish without contradiction was that Sol was to get his deed on November 7, 1945.

Since the undisputed facts will compel a decision of this cause, it is wholly unnecessary to detail the testimony of Sol Mark or point out the conflicts and inconsistencies therein or some of its incredible features. Neither is it necessary to set out the evidence of H. L. Rankin or Albert Buck Mark or the other witnesses. It is suf-

ficient simply to say that the evidence of H. L. Rankin is wholly contradictory of the claim and theory of the complainants that he practiced any fraud, or was under any kind of trust relation to Sol Mark. Albert Buck Mark, on the stand, corroborated Rankin's version. However, at times he vacillated to such an extent as to cast serious doubts on the verity of both of his versions. If the issue, about which there was so much dispute, was determinative of the cause, due regard would have to be given to the trier of fact.

■■ ■ According to the complainants' theory, Sol was to get a deed to the forty acres of land and one-half of the minerals thereunder. That deed was to be delivered to him on November 7, 1945. He did not get it. Consequently a cause of action to obtain the deed arose to him the next day, November 8, 1945. Statutes of limitation begin to run as soon as there is a cause of action. Aultman v. Kelly, 236 Miss. 1, 109 So. 2d 344. "A cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested * * *" Forman v. Mississippi Publishers Corporation, 195 Miss. 90, 14 So. 2d 344. See also Thames v. Holcomb, 230 Miss. 387, 92 So. 2d 548; Old Ladies Home Association v. Hall, 212 Miss. 67, 52 So. 2d 650, 54 So. 2d 170; Krohn v. L. N. Dantzler Lumber Company, 208 Miss. 691, 45 So. 2d 276; Burton v. Gibbes, 204 Miss. 248, 37 So. 2d 285; Milam v. Paxton, 160 Miss. 562, 134 So. 171; Cooper v. Cooper, Adm'x, 61 Miss. 676; Tippin v. Coleman, 61 Miss. 516. ■■ ■ Sol did nothing to enforce delivery to him of a deed, of the tenor and effect as now claimed, until he filed this suit on January 28, 1958,—more than ten years after his cause of action accrued or came into existence.

The applicable part of Section 709, Code of 1942, Recompiled, is as follows: "A person may not make an entry or commence an action to recover land but within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued

to some person through whom he claims; or, if the right shall not have accrued to any person through whom he claims, then within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same * * *'' In the remaining part of the section the right is extended to a person under the disability of infancy or unsoundness of mind to bring the action within ten years from the removal or cessation of such disability. While Sol was very adept at telling the court how ignorant he was and how little he knew, there was of course no claim or suggestion that he was under the disability either of infancy or unsoundness of mind. Obviously his right to bring this action was barred.

By Section 710, Code of 1942, Recompiled, the same limitations, as provied for in Section 709, supra, apply against a person claiming land in equity, except as to cases of concealed fraud. But even then the cause of action accrues at the time at which ''the fraud shall, or, with reasonable diligence might, have been first known or discovered.''

 There was no substantial basis upon which it could be said that fraud, if in fact there was such, was concealed. In the first place, Rankin's deed from Albert Buck Mark and wife was promptly recorded, and of course constituted constructive notice. On account of the recordation, the circumstances were public and the means of finding out the character of the transaction were available. Gandy v. Burke, 236 Miss. 241, 109 So. 2d 926; Aultman v. Kelly, supra; Sowell v. Rankin, 120 Miss. 458, 82 So. 317; Bank of Lexington v. Cooper, 115 Miss. 782, 76 So. 659; Mangold v. Barlow, 61 Miss. 593, 48 Am. Rep. 84. See also Walley v. Hunt, 212 Miss. 294, 54 So. 2d 393; King v. Childress, 232 Miss. 766, 100 So. 2d 578. In the second place, Sol knew that J. P. McRaney was reserving one-half of the minerals. In the deed from Albert Buck Mark and wife to Sol, minerals were not mentioned. In such circumstances, a person of ordinary

sense ought to make inquiry as to the state of his title. In the third place, Sol, in his deed of trust to the Federal Land Bank, made it subject to McRaney's recorded reservation of one-half of the minerals and to Rankin's recorded deed to one-half of the minerals. Mr. McCloud, the representative of the Bank, handled this transaction; and when Sol was asked if he denied that he told Mr. McCloud that he did not own any of the minerals, he replied, ''No, sir.''

Manifestly the plea of the statutes of limitation in bar of the suit ought to have been sustained, and the cause should have been dismissed with prejudice at the cost of the complainants.

In addition, the prayer of the defendant and cross-complainant, H. L. Rankin, on his cross-bill, ought to have been sustained and he should have been declared to be the true and lawful owner of an undivided one-half interest in the oil, gas and other minerals in and under said land and the claim of the complainants and cross-defendants, Sol and Flossie Mark, should have been cancelled as a cloud on the title thereto.

Consequently the decree of the trial court is reversed and the claim of the complainants is dismissed with prejudice; and a decree will be entered here declaring the defendant and cross-complainant, H. L. Rankin, to be the true and lawful owner of the one-half interest in the minerals, as heretofore stated.

Reversed and decree here for the appellants.

*McGehee, C. J.,* and *Hall, Kyle, Ethridge* and *Gillespie, JJ.,* concur.