BROOM, Justice,
for the Court:
“Joint venture” was the relationship decreed to have existed between J. Ray Steb-bins and R. E. Hayes, both now deceased, during the 1940’s when Hayes purchased various mineral rights (located in several counties) in Stebbins’ name. Hayes’ widow, appellee Mrs. Lillian Mae Hayes, filed suit in the Chancery Court, Second Judicial District of Jasper County against the defendants (appellants) Mrs. Kathryn S. Stebbins and two of her grantees, Mary W. Heidelberg and J. Ray Stebbins, Jr., identified jointly herein as Mrs. Stebbins. Theory of the suit is that the deceased oil operators J. Ray Stebbins and R. E. Hayes in their lifetimes had a joint venture [1] to acquire minerals and share profits; that although title was taken in Stebbins’ name, the joint venture in truth owned the title. The decree appealed from (1) divested Mrs. Stebbins of a 50% interest in the minerals, (2) vested it in Mrs. Hayes, and (3) ordered an accounting for royalties collected. On appeal, Mrs. Stebbins contends that: the evidence is insufficient to support the decree, Mrs. Hayes’ claims are barred by limitations and laches, and the chancellor made erroneous evidentiary rulings. We reverse.
Actual acquisition of the minerals at issue occurred during the 1940’s by virtue of the activities of Stebbins and Hayes. Stebbins died in 1952 and Hayes died in 1970. The facts show that in 1944 and 1945, Stebbins was buying oil leases mainly for sale to Sinclair-Wyoming Oil Company. Hayes was also in the oil business and the two men had some sort of arrangement under which both of them would purchase oil leases from land owners. Their usual practice apparently was for Hayes to operate by drafting on Stebbins’ account, or purchase leases by using funds drawn from an account set up by Stebbins for such a purpose. When leases were acquired, most of them were sold to Sinclair after which Hayes and Stebbins divided profits. They continued to operate in this fashion until some time in 1945 when Hayes apparently returned to his home in St. Elmo, Illinois, never to return to Mississippi except for one visit in 1946. Suit was filed approximately thirty years after his last Mississippi visit.
The subject of this litigation is mineral interests under two tracts of land in Jasper County designated as the Heard and Perry-man tracts. Commercial production of oil on the Heard tract began in 1954 and began on the Perryman tract in 1971. As found by the chancellor in his opinion, the Heard tract consisted of 286 acres under which Hayes purchased a u/m interest in the name of Stebbins. The Perryman tract consisted of 320 acres under which Hayes purchased in the name of Stebbins a Vs interest. Evidence heard by the chancellor consists mainly of documentary items because both Stebbins and Hayes have long since been deceased. They operated without any written agreement, but the record discloses that there was a “joint account” and that Mrs. Stebbins kept the records. In the record is a so-called “joint account statement” compiled in 1944. Another set of figures appeared during 1946, but neither appeared to be a final accounting. Mrs. Hayes’ CPA was unable to discern from the records the actual status of the account between Steb-bins and Hayes.
The bill of Mrs. Hayes charges that during the years 1943, 1944, 1945 and 1946 the two men (Hayes and Stebbins) “entered into a joint adventure” pursuant to which Mr. Hayes would acquire “mineral interests, royalty interests, and leases” in Stebbins’ name for their joint benefit. It then charges that after title was taken in Steb-bins’ name to certain mineral interests and even though Hayes paid “his one-half of the *900 consideration” and even though “title to the property” was in fact owned by the joint adventure, Stebbins and later Mrs. Stebbins (after Mr. Stebbins’ death) conveyed or attempted to convey portions of such properties and received royalties from production of such oil and gas. Upon such a basis, Mrs. Hayes obtained a decree below upholding her “joint venture” theory, adjudication “each co-adventurer” owned one-half the mineral interests in dispute, and requiring Mrs. Stebbins to account for “all receipts and disbursements” pertaining to the tracts of land involved.
Revealed by the record is the fact that Stebbins acquired ownership of the Perry-man minerals to the exclusion of Hayes but that Hayes held a like interest in the same tract purchased from a different grantor, S. F. Thigpen, Jr. Another fact revealed by the joint account is that in 1945 there was an apparent division of the interest held on the Heard tract.
Evidence shows that Hayes and Stebbins acquired mineral interests in various counties but no pattern exists to establish that in every case the one taking title or ownership would convey an interest to the other. Hayes took title to three mineral interests in the Second District of Jasper County, but made only two transfers to Stebbins. Also in the Second District, there were four mineral deeds into Stebbins who then made two transfers to Hayes. As to the First District in Jasper County, there were two mineral deeds to Stebbins but no transfers from him to Hayes.
In 1952, Mrs. Stebbins leased the entire Heard tract to one Hunt and production was obtained on the tract on June 1954, after which.Mrs. Stebbins received and retained for herself all the royalty. She claims to have been in open, adverse possession of the Heard minerals since 1954 (over twenty years).
By deed dated May 10, 1944, recorded May 11, 1944, Perryman deeded to Stebbins a Vsth interest in the 320-acre Perryman tract (40 mineral acres). The original of this deed was located in Stebbins’ file after his death. Of these forty mineral acres, Stebbins deeded to Joe F. Snyder a Vknd interest (10 mineral acres), leaving vested in Stebbins s/s2nds (30 mineral acres). Fourteen days after Perryman executed the mineral interest conveyance to Stebbins, one Thigpen, who had previously bought from Perryman, deeded to Hayes a %2nds mineral interest (30 mineral acres) under the same Perryman tract. This conveyance, dated May 24, 1944, was found in the same file which contained the deed under which Stebbins was grantee. Appearing upon the original Perryman-to-Stebbins deed is the following language: “Make Vs2 to this deed to Joe ONLY”. (Obviously the “Joe” is the Joe F. Snyder referred to above). Of these minerals neither Stebbins nor Hayes conveyed any portion to the other, but under the Perryman tract each of them continued to hold record title to 30 mineral acres (%2 nds).
Stebbins died testate in 1952 and named his widow Mrs. Kathryn S. Stebbins as sole devisee. On August 26, 1952, she filed an inventory including by legal description the full 30 acres minerals under the Perryman tract as owned by her husband at the time of his death. By instrument dated May 29, 1964, Mrs. Stebbins leased the Perryman minerals in Section 4 to one Hitt. She executed a rental division order of the. same date which was recorded the following year. Subsequently, on June 22, 1970, she executed a mineral lease on the Perryman Section 4 minerals to Homer Lynn, which was recorded in July of that year. She leased the Section 9 Perryman minerals on September 29, 1971 to Homer Lynn, which lease was recorded October 15, 1971. A “rental division order” was executed by her on the last stated date.
Mrs. Stebbins executed several mineral deeds covering the entire mineral interest which her husband had obtained from Per-ryman. One was executed in favor of a Mr. Thurber in 1957, two to Mary Heidelberg in 1971, and one to J. Ray Stebbins, Jr. in 1971.
Since 1971 or 1972 there has been oil production on the Perryman tract, and production on the Heard tract since June 1954. *901 The appellee, Mrs. Lillian Mae Hayes, in her bill of complaint, averred that Mrs. Steb-bins collected royalties on both tracts to the exclusion of Hayes, but the record shows no demand made upon Mrs. Stebbins for any pro-rata division of the royalties as between the parties.
Two letters were written by Mr. Heidelberg, attorney for Mr. Stebbins’ estate, pertaining to any claim that Hayes might have relating to the business association and activities of Hayes and Stebbins in 1944 and 1945. The first request to Hayes was by letter dated June 24,1954. The second was a follow-up letter by certified mail dated September 18, 1959. R. E. Hayes signed the certified mail receipt on September 24, 1959, but made no response to either letter. After his death in 1970, both letters were found among Hayes’ papers where they had remained unanswered, one for some sixteen years and the other for eleven years.
Mr. William M. Price, C.P.A., testified for Mrs. Hayes. He made an examination of certain records of the activities of Mr. Hayes and Mr. Stebbins, and the following is excerpted from his cross-examination:
Q. So you don’t know from what you examined, what the status of their account is at the present time?
A. That is correct.
The testimony shows that Hayes left Mississippi in 1945 but returned in 1946 for a brief visit. What agreements were reached at that time, if any, only Mrs. Stebbins knows, and her testimony was excluded on objection.
The first issue is whether or not Mrs. Hayes at the trial met her burden of proof sufficiently to support the decree that her husband and Stebbins were joint ven-turers. Deciding this issue requires adherence to the rule that one seeking to establish divestiture on the theory that record title is held for another requires the movant (Mrs. Hayes) to carry a heavy burden. In Dalsoren v. Olsen, 247 Miss. 778, 157 So.2d 60 (1963), we stated:
The record title owner of real estate is presumed to be the legal and equitable owner of the same. Jordan v. Jordan, 145 Miss. 779, 111 So. 102; Jones v. Jones, 226 Miss. 378, 84 So.2d 414; and 59 C.J.S. Mortgages § 48 a., p. 82. See also Conner v. Conner, 238 Miss. 471, 119 So.2d 240. These authorities sustain the view that the burden of proof is upon the person claiming the benefit of a resulting trust to prove by clear, strong, unequivocal and unmistakable evidence that the alleged beneficiary of the trust has paid for the property beyond any reasonable doubt. (157 So.2d at 62).
See also Harris v. Spearman, 359 So.2d 1381 (Miss.1978), wherein the claimant was silent for sixteen years and until death of the record title holder.
It is clear that Hayes and Stebbins worked together in some manner during the 1940’s, but the record fails to establish just what their working arrangement was. No clear pattern of how they were to deal with mineral interests acquired by either or both of them is made to appear. Our view of the record is that Mrs. Hayes did not produce evidence rising to meet the burden which she must bear, that is to prove her case by “clear, strong, unequivocal and unmistakable evidence” necessary under Dalsoren v. Olsen, supra, and Harris v. Spearman, supra. True enough, some of the documentary evidence appearing in the record is subject to lending credence to the contention that Stebbins in his lifetime and Mrs. Steb-bins after his death recognized that Hayes may have had some claim to the subject minerals in controversy. Such documents are an ad valorem tax exemption application of Mr. Stebbins, and an inventory of his estate filed by Mrs. Stebbins after his death. Other evidence more strongly negates that Mr. or Mrs. Stebbins recognized any such claim by Hayes. However, our view is that upon the peculiar record presented, it is conjecture and speculation to hold that the minerals to which Stebbins held record title are owned in part by Mrs. Hayes.
Regardless of whether Mrs. Hayes met her burden of proof, and should it be conceded for the sake of argument that *902 when Stebbins became vested with record title to the mineral interest in controversy during the 1940’s, he held title for himself and Hayes, any claim asserted by Hayes is now barred by limitations and laches. Whatever claim Hayes may have had to the minerals would be by virtue of deeds vesting in Stebbins legal title no later than 1945. It is apparent that Hayes had actual or constructive knowledge of the deeds, each of which was recorded. There is no averment in the bill of complaint and no testimony of any concealment of anything by Mr. or Mrs. Stebbins. Likewise, there is no charge in the bill and no evidence that Stebbins bound himself to hold title for Hayes indefinitely or until some future occurrence.
Hayes departed Mississippi in 1945, and all indications are that at that time his business relationship with Stebbins ceased. When Stebbins died in 1952, and until oil production from the Perryman tract commenced in 1971 or 1972 (production on the Heard tract commenced in 1954) no action was taken on the part of Mr. or Mrs. Hayes concerning any interest he had in the subject minerals, although twice the attorney for the estate, by letters written to Hayes, called for Hayes to assert any claim he might have. It is strongly argued by Mrs. Stebbins that whatever cause of action ever accrued in favor of Hayes regarding the mineral interests at issue, the years 1944 or 1945 would be the time when such cause of action accrued. Since 1945, whatever cause of action Hayes had remained the. same.
Cited by Mrs. Stebbins is Rankin v. Mark, 238 Miss. 858, 120 So.2d 435 (1960), which held:
A cause of action “accrues” when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested . .. (120 So.2d at 437).
Under our statutory and case law, the applicable statutes of limitations barred Mrs. Hayes’ claim at least as early as 1962 which was ten years after Mr. Stebbins’ death in 1952. These statutes are the following Mississippi Code (1972) sections:
§ 15-1-7 — Limitations applicable to action to recover land.
A person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same. .
§ 15-1-9 — Limitations applicable to suits in equity to recover land.
A person claiming land in equity may not bring suit to recover the same except within the period during which, by virtue of section 15-1-7, he might have made an entry or brought an action to recover the same, if he had been entitled at law to such estate, interest, or right in or to the same as he shall claim therein in equity. . . .
There is no way under these statutes and our case law whereby Mrs. Hayes’ claim could be asserted in an action such as she brought here over twenty-four years after Stebbins’ death in 1952. Our study of the bill brought by Mrs. Hayes leads to the conclusion that its theory is in the nature of an implied trust or the right to a partnership accounting. Obviously, we are not presented any express trust which must be in writing under Mississippi Code Annotated § 91-9-1 (1972). In addition to the limitations statutes of our state already referred to, there is Mississippi Code Annotated § 15-1-39 (1972), providing in part:
Bills for relief, in ease of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after, .
As we stated in Barrett v. Turner, 229 So.2d 563 (Miss.1969),
. where the purchaser of property buys it with the money of another the *903 trust there created in favor of the party whose money is used is an implied resulting or constructive trust and it is not an express trust. It is, therefore, subject to the statute of limitations. See cases cited in Sullivan v. Nobles, 211 Miss. 330, 51 So.2d 736 (1951).
(229 So.2d at 567).
Ordinarily the right to enforce something in the nature of an implied or constructive trust accrues at the time of performance of the act from which the trust results. In other words,
. the statute runs from the time when the act was done by which the party became chargeable as trustee by implication, which is to say, from the time when the cestui que trust could have enforced his right by suit. 34 Am.Jur. p. 143. . . . (Rimmer v. Austin, 191 Miss. 664, 4 So.2d 224 [1941]).
Prewett v. Buckingham, 28 Miss. 92 (1854) and Sullivan v. Nobles, 211 Miss. 330, 51 So.2d 736 (1951) both upheld the foregoing statement of the law.
The lower court issued its “Finding of the Court”, stating that: “ . . . the law seems clear that such a joint adventure will continue until terminated by one or both of the parties.” Under this ruling of the chancellor, it would appear that the “joint adventure” could continue forever. Under such a view, Mrs. Hayes or her future successors could have very well waited until the year 2000 or even 3000 and then brought their suit, which in effect would nullify the meaning of our limitations statutes. Although no Mississippi case directly in point has been cited, the general rule is that ordinarily a joint venture terminates as a matter of law upon the death of a member especially “if the agreement creating the venture calls for participation of such member in the conduct of the venture.” 46 Am.Jur.2d (1969), § 31, Joint Ventures. See also 48 C.J.S. Joint Adventures § 4 (1947). Terms of the joint venture (if such existed between Hayes and Stebbins) are not well defined in the record but, assuming such a venture did exist, it would not be reasonable to conclude that “participation” by each of them was not called for, or that a surviving spouse would be substituted when one of the venturers died. Therefore, we hold that the death of Mr. Stebbins in 1952 terminated anything in the nature of a “joint venture” between him and Mr. Hayes. This is particularly true here on this record absent any indication of any intent that any “joint yenture” arrangement would continue subsequent to the death of either party. As stated in C.J.S., supra, general law is that the surviving member of a joint adventure is under a duty to “wind up its affairs.” Twenty-four years elapsed after Stebbins’ death before the suit was filed, and accordingly the suit is barred by our limitations statutes.
To uphold the ruling of the lower court here would be to rule that the understanding or arrangement between Hayes and Stebbins survived the passage of more than thirty years time during which Hayes was not only absent, but demonstrated no interest whatever in the interests said to have been acquired by the joint venture arrangement. Such an order would allow survival of the arrangement in face of the absolute lack of activity in the parties’ account since 1945, and since Stebbins’ death in 1952, during which time, according to the land records, either Mr. or Mrs. Steb-bins were dealing with the minerals in dispute as record fee simple owners. Surely upon the facts of this case it cannot be said that Stebbins’ death, of which Hayes had knowledge, did not terminate any possible status of Stebbins as Hayes’ joint adventurer. This is especially true here where it was not charged and not proven that Mrs. Stebbins was somehow substituted as a joint adventurer in the place of the deceased Mr. Stebbins. Whether the claim of Mrs. Hayes is in the nature of a resulting trust or for a partnership accounting, pursuant to our limitations statutes such a claim cannot be viable as of the date of the filing of this suit twenty-four years after Stebbins’ death. Not only was the suit’s filing date twenty-four years after Steb-bins’ death, it was filed thirty-one years subsequent to the execution of the deeds to *904 Stebbins in 1945, thirty years after Hayes last visited Mississippi, twenty-two years following attorney Heidelberg’s first letter to Hayes requesting him to do something with any claim which he might have, seventeen years after Heidelberg’s second letter, and twenty-two years after commencement of production from the Heard tract. We must reverse because prosecution of the suit filed in 1976 is barred by our statutes of limitations, supra, statutes of repose. Additionally, laches as pled would require reversal.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ„ and SUGG, WALKER, BOWLING and COFER, JJ., concur.
LEE, J., took no part.

. “Joint venture” and “joint adventure” seem to be synonymous and interchangeable.