Statement of the case.

FREDERICK STANTON *v.* THOMAS HELM ET AL.

[39 South. Rep., 457.]

1. ESTATES OF DECEDENTS.  *Witnesses.  Code* 1892, § 1740.

Under Code 1892, § 1740, so providing, a person may not testify to establish his own claim against the estate of a deceased person where such claim originated during the lifetime of the decedent.

2. STATUTE OF LIMITATIONS.  *Express trust.  Continuance of relation.*

Limitation does not run against an express trust so long as the trust is acknowledged or the trust agreement subsists.

3. SAME.  *Code* 1892, § 2763.  *Repudiation of trust.*

Under Code 1892, § 2763, providing that bills for relief in case of a trust not cognizable by the courts of common law shall be filed within ten years after the cause of action shall accrue, a cause of action accrues and limitation begins to run, in case of a trust, either express or implied, not cognizable by the courts of common law, where by express declaration or act adverse to the recognition and existence of the trust relation the beneficiary is actually advised of the repudiation of the trust by the trustee.

4. SAME.  *Concrete case.*

The acts of a trustee in selling a half interest in the trust estate with the full knowledge of the beneficiary and his subsequent delivery of possession to the vendee without protest or objection, and in destroying a letter containing a recognition of the trust in the presence of the beneficiary and his wife, were sufficient to indicate the repudiation of the trust by the trustee and to set limitations in motion against the enforcement of the trust.

FROM the chancery court of, first district, Hinds county.

HON. ROBERT B. MAYES, Chancellor.

Stanton, the appellant, was complainant in the court below; Helm and others, appellees, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court.

Appellant owned and managed a plantation known as "La Marque," in Concordia parish, La. His operations were not

successful, and a mortgage had been given to commission merchants of New Orleans for $4,500. In November, 1876, in accordance with an agreement between appellant and Thomas E. Helm, the father of appellee, Thomas Helm, this mortgage was assigned to Mrs. Spicard, the sister of Thomas E. Helm and aunt of Stanton, her money being advanced to procure the assignment. Foreclosure proceedings which had been instituted by the original mortgagees resulted in a sale of the lands on April 21, 1877, at which sale Thomas E. Helm became the purchaser, and, receiving a commissioner's deed, he promptly recorded it, and, having obtained a quitclaim deed from Stanton, he also placed it of record. Thomas E. Helm paid, in addition to the amount bid at the sale, all taxes due, including those for the two years prior to his purchase, and certain enrolled judgments which rested as a lien on the place, and also advanced money to run the place during the year 1877. Stanton remained on the place during the year 1877, and was present when Thomas E. Helm sold, under warranty deed, to T. K. and E. H. Green a half interest in the plantation, T. K. Green going on the place as manager. Several years later T. K. Green purchased the interest of E. H. Green, and thus became the owner of an undivided half interest in the property. Green and Thomas E. Helm treated the property as their own, improved it, purchased and added to it other lands adjoining, and conducted the farming operations as owners of the property. The accounts were kept in common with all other accounts of Green and Helm, no separate accounts being kept for this particular plantation. About 1879 Thomas E. Helm destroyed, in the presence of Stanton and his wife, a letter written in 1877 acknowledging that the purchase was made under a trust agreement. Subsequently Stanton and his lawyer demanded of Green and Thomas E. Helm an accounting of the proceeds of the crops on La Marque. This was refused, and no accounting was ever made, and Stanton's right thereto denied. Stanton spoke to counsel to bring suit in 1892, but no suit was

brought until the present proceeding was instituted. · All these matters occurred more than ten years before the institution of this suit. Thomas E. Helm died in 1893, and the operations continued until 1902, when appellee, Thomas Helm, and Erskine Helm, heirs of Thomas E. Helm, conveyed to Ellen H. Green, widow of T. K. Green, their half interest in the property. From 1878 up to the death of the elder Helm, Stanton frequently called on him for financial assistance, and received loans at various times, and nowhere in the correspondence is there anything to indicate that Stanton claimed an interest in the plantation. After the death of the elder Helm, his son, appellee Thomas Helm, made further loans to appellant, and there is no intimation in the correspondence between them of any claim by appellant to the property.

In February, 1903, Stanton filed a bill in chancery, alleging that the original transaction in 1876 was a loan, and that Thomas E. Helm, for some reason of his own, took the assignment of the mortgage aforementioned in Mrs. Spicard's name; that complainant had an agreement with Helm whereby the land was to be purchased by Helm at the foreclosure sale and held in trust for the benefit of complainant, and reconveyed to him when the debt and interest and advances made should be satisfied; that this agreement was reduced to writing, which Helm agreed to file for record, but which was never recorded, and the agreement had been lost. The complainant further alleged that he only recently learned of the sale to the Greens, and asserted his claim as the equitable owner of the property, and prayed a discovery of all the facts connected with the transaction and for an accounting. The case was heard on pleadings and evidence, and the court entered a decree dismissing the bill.

*Frank Johnston,* and *John S. Boatner,* for appellant.

The fact that Thomas E. Helm purchased the property under a trust agreement to convey it to Stanton when the purchase

money advanced by Helm was repaid by the rentals of the place, is proved and demonstrated, clearly and beyond doubt, by the testimony in the cause. All of the attending facts and circumstances connected with the mortgage foreclosure sale corroborate the testimony of the complainant's witnesses, and force the conclusion, irresistibly, that Helm purchased the property in trust for Stanton.

In view of the undisputed fact that Helm went into possession of the plantation, it is wholly immaterial whether the agreement was that Stanton was to redeem the property, independently of the rents, or whether Helm was to apply the rents to his debt.

Thomas E. Helm was an express, and not an implied, trustee. The trust was an express one and a continuing one, arising, as it did, out of the express stipulations of a trust agreement. Code 1892, § 2763, does not apply to this case.

The statute of limitations does not run against express trusts, and it will commence to run only from the time the trustee abandons the fiduciary relation and asserts an adversary claim. *Murdock* v. *Hughes,* 7 Smed. & M., 219; *Decouche* v. *Savtin,* 2 Johns. Ch. R., 190; *Provost* v. *Gratz,* 6 Wheat., 481; *Carpenter* v. *Cusham,* 105 Mass., 417; *Albrecht* v. *Wolf,* 59 Ill., 186; *McCandless Estate,* 61 Penn. St., 9; *Weiss* v. *Rodgers;* 32 Texas, 218; *Siggins* v. *Heard,* 31 Miss., 426.

Notice of any disavowal of the trust by the trustee must be "brought home to the knowledge of the beneficiary with unquestionable certainty," as was said by the supreme court of Alabama in *Holt* v. *Wilson,* 75 Ala., 58.

The record of a deed does not amount to constructive notice. *McCarthy* v. *McCarthy,* 74 Ala., 540.

The bill in this case was filed in February, 1903, within ten years after Helm's death, which occurred in September, 1893.

Code 1892, § 2732, does not apply. This is not the case of a mortgagee in possession under an implied trust, a trust arising by operation of law, but the case of an express trust, resting

upon a trust agreement for the reconveyance of the title upon the repayment of a debt out of the rents of the property.  Angell on Limitations, sec. 25, p. 20.

This suit is not barred by any statute of limitations.  As to the question of staleness or laches, this court has settled the rule that nothing short of a statute of limitations can bar a suit in this state.  *Westbrook* v. *Mounger,* 61 Miss., 329; *Taylor* v. *Chickasaw County,* 70 Miss., 87 (s.c., 12 South. Rep., 210).

*Brame & Brame,* for appellees.

The complainant, Stanton, is an incompetent witness.  *Jacks* v. *Bridewell,* 51 Miss., 881; *Green* v. *Mizell,* 54 Miss., 220; *Jackson* v. *Smith,* 68 Miss., 53 (s.c., 8 South. Rep., 258).

Possession of realty is an apparent right, and when it is long continued, it is highly favored in law, which sustains it by all reasonable presumptions.  Almost every variety of written evidence of title will be presumed in favor of long possession; all presumptions being in favor of the possessor, and none against him.  *Stevenson* v. *McReary,* 12 Smed. & M., 9; *Nixon* v. *Carco,* 28 Miss., 414.

The complainant has no case, because, assuming that he originally had the alleged agreement with Helm as to the right to redeem or repurchase this property, his rights are long since barred by limitation.  Code 1892, § 2732.

If Helm held the property as mortgagee or trustee, it was a breach of the trust and an adversary act for him to sell an undivided half interest, as was done by his deed to the Greens, December 5, 1877.  Conveying away absolutely an undivided interest in the trust of property to innocent purchasers by deed of conveyance, with a warranty of title, which deed was acknowledged and put upon record, was an adversary act of the most positive character.  This was a positive assertion of absolute ownership by Helm, totally inconsistent with the alleged trust, and necessarily set the statute of limitations in operation.

*Kolheim* v. *Harrison,* 34 Miss., 457; *Green* v. *Mizell,* 54 Miss., 220, *supra.*

It is undisputed that Stanton knew as a fact that the Greens had purchased the half interest in the property; and, besides, the deed itself was placed on record in June, 1878. Therefore he had both actual and constructive notice of what he now swears was a most flagrant breach of the trust on the part of Helm, who he claims was holding the property in trust for him; and yet he did not sue for twenty-four years. In addition to all this, the testimony shows, beyond any doubt or question, that Helm and the Greens held and claimed the land openly and notoriously as owners, improving it, adding other lands to the tract, and asserting all possible acts of ownership.

Helm is shown to have been a scrupulously honest man and a good business man, and the very fact that he failed to keep a separate account in reference to the La Marque plantation is in itself of the greatest import.

There was nothing concealed. He and the Greens improved, used, and enjoyed the property openly, notoriously, and continuously as owners; and there is no pretense that any one in the community or anybody connected with all this business ever had any knowledge or notice or intimation of any kind to the effect that the complainant had any interest in the property or any right to its proceeds. The complainant was well aware of the occupancy, improvement, and control of this property by Helm and the Greens for all these years, for it was notorious in the community. The undisputed testimony shows that Helm and the Greens were known to be in the open possession of this property as owners.

It is impossible to conceive of anything that was omitted which would have more effectually shown the adverse holding and the notice thereof to Stanton.

Even in the case of express trust, such as landlord and tenant, vendor and vendee, tenants in common, and the like, the statute of limitations always begins to run (1) where the possession

is open, adverse, and notorious; (2) where there are adversary or hostile acts indicating a claim of ownership on the part of the person in possession which are reasonably brought home to the knowledge of the other party. On the general subject, and as illustrating the various instances in which the statute has been held to apply, we cite the following authorities: 1 Cyc., 106 and notes; *Magee* v. *Magee,* 37 Miss., 138; *Paxton* v. *Railroad; Greenwood* v. *Moore,* 79 Miss., 201 (s.c., 30 South. Rep., 609); *Tuteur* v. *Brown,* 74 Miss., 774 (s.c., 21 South. Rep., 748).

Argued orally by *Frank Johnston,* for appellant, and by *L. Brame,* for appellees.

TRULY, J., delivered the opinion of the court.

The testimony of Stanton, the appellant, falls clearly within the inhibition of the rule announced by Code 1892, § 1740. This is a suit which he has instituted to establish and enforce a claim against the estate of a decedent, which originated in the lifetime of the deceased. Manifestly it is not competent to prove such claim by his own testimony. This rule is so well settled that any citation of authority to sustain the conclusion is thought unnecessary. Nor do we understand that able counsel for appellant seriously controvert the correctness of this proposition, but they rely upon other testimony in the record to make out the case. With the deposition of Frederick Stanton left out of consideration, the cause of the appellant rests on the testimony of his wife, in connection with certain minor circumstances of slight probative force detailed by other witnesses. Giving to the testimony of Mrs. Virginia Stanton implicit credence, the following facts may be considered as proven: The purchase of the land in controversy by Thomas E. Helm, in 1877, was in pursuance of an agreement between him and Frederick Stanton. This agreement created an express trust on the part of Helm to reconvey to Stanton under certain circumstances. But this is all. Here the competent testimony for the appellant ends. In view

of the entire record, this is not enough to make out his case. The irresistible preponderance of the evidence demonstrates that the original agreement, whatever its exact terms may have been, was either annulled by subsequent settlement or openly repudiated by Helm. The conduct of all parties and all the facts in proof are more readily reconciled on the theory that at the close of the year 1877 a complete settlement was amicably reached, all differences adjusted, and the agreement to reconvey canceled. This conclusion is more in harmony with the relations proven, by correspondence and the unbroken course of business dealings, to have existed between the parties for more than a quarter of a century, than to assume from a series of trivial and disconnected circumstances that Thomas E. Helm had deliberately deceived, oppressed, and defrauded an unfortunate kinsman, whom the record shows he had assisted at many critical junctures.

However this may be, certain it is that the alleged trust agreement was, after the fall of 1877, repeatedly and openly repudiated by Helm, by many acts adverse to any claim by Stanton, and antagonistic to the idea that he recognized that his title to the land in question was clouded by any conditions. An open repudiation of a trust by the one attempted to be charged therewith, if plainly brought to the notice and knowledge of the parties in interest, is sufficient to place in motion the statute of limitations, whether the trust be express or implied. *Cooper* v. *Cooper,* 61 Miss., 696. In the case of an express trust, no statute of limitations runs so long as the trust relation is acknowledged or the trust agreement subsisting, because, so long as this condition exists, no cause of action has accrued. But in case of a trust "not cognizable by the courts of common law," like the one now under consideration, whether the same be express or implied, a cause of action does accrue, and the statute of limitations begins to run immediately, when by express declaration of repudiation to them, or act adverse to the recognition

and existence of the trust relation brought to their knowledge, the parties in interest are actually advised that the trust has been repudiated. From the moment the parties claiming an interest by virtue of a trust, even though express, are actually notified, by declaration or adversary act, that the trust is denied—from that moment the holding or possession becomes adverse to their claim. Code 1892, § 2763; *Cooper* v. *Cooper, supra.*

It is unnecessary to enumerate the many and various incidents of open, adverse assertion of sole and hostile title by Helm, all of which were with the personal knowledge of the appellant. The record abounds with such acts utterly inconsistent with the idea that Helm acknowledged the existence of any trust relation between himself and Stanton. The sale of a half interest in the trust estate in 1877 to Green, with the full knowledge of Stanton, and his subsequent delivery of possession without protest or objection, and the destruction of the letter, which it is now claimed contained a recognition of the trust, in the presence of Stanton and his wife, are sufficient, without a detailed recitation of other equally potent facts, to demonstrate the absolute repudiation by Helm of any trust, express or implied. And as these acts all occurred more than ten years before the institution of this proceeding, it follows that any right of recovery which Stanton might originally have had was barred.

*The decree is affirmed.*