THAMES, et al. *v.* HOLCOMB, et al.

No. 40396          February 18, 1957          92 So. 2d 548

*E. L. Dent, W. W. Dent, Bonnie Smith,* Collins, for appellant.

*John K. Keyes,* Collins, for appellee.

LEE, J.

Mrs. Fannye Holcomb Thames and others, by their bill of complaint against Mrs. Clyde D. Holcomb and others, the heirs-at-law of Clyde D. Holcomb, deceased, sought to have themselves declared to be the owners of an eight-ninths interest in one hundred and eighty acres of land, as described therein, by reason of a trust relationship between them and the deceased.

The answer of the defendants denied the material allegations of the bill, and pled specially the provisions of Sections 264 (c) and 269, Code of 1942, of the Statute of Frauds, and Sections 709, 710, 711, 718, 722, 743, and 746 Code of 1942 of the Statutes of Limitations.

At the conclusion of the evidence for the complainants the court held that a certain letter, introduced in evidence, was sufficient to establish an implied but not an express trust, and that the suit was barred because it was not filed within ten years from the date of the letter. Consequently it was adjudged that the complain-

ants have no legal or equitable interest in the land, and their bill was dismissed with prejudice. From the decree entered the complainants appealed.

On September 15, 1917, S. A. Holcomb and wife, Minnie Mary Holcomb, the owners of this land, executed a deed of trust thereon to the Federal Land Bank of New Orleans, Louisiana, to secure an indebtedness of $900, payable in thirty-six annual installments. Thereafter, on November 23, 1926, they conveyed a part of this land to Jap Thames, a son-in-law. Later, S. A. Holcomb died; and on March 25, 1929, Jap Thames, by two deeds of the same date, first conveyed eighty acres and then the whole one hundred and eighty acres to Mrs. Minnie Holcomb. In March 1930, Mrs. Holcomb died intestate, leaving nine children represented by the complainants and the defendants.

On July 17, 1930, Mrs. May Holcomb Parker and Mrs. Fannye Holcomb Thames, and Mrs. Ina Holcomb Cornett, Paul Albert Holcomb and Mrs. Eva Holcomb Thames, being five of the heirs and of the present complainants, by two separate instruments, conveyed their equity in the land to H. C. Mayo. The Federal Land Bank was about to foreclose its deed of trust; and on November 20, 1933, Clyde D. Holcomb wrote the following letter to his brothers, Paul and Fred, to wit:

11-20-33

"Dear Paul and Fred:

"I am sending you a deed to sign that will give me the authority to refinance the old place thru the Federal Land Bank Commissioner.

"Now if you and Fred will do this I can borrow enough to pay up the back taxes and the past due instalments to the land Bank. Otherwise they will foreclose on it. We have carried it thru the worst times that we will ever see and I think we should try to save it they will not lend any one money except those living on the land. Now

I will make each one of the heirs a deed to 1/9 Part of the Estate after I get the loan made. This is the only way I know to get it. I have talked to all of the kids but you and Fred and they are willing. Four of them have signed the deed already you and Fred get together and sign this before a Notary and get it back as soon as possible, because I must have every thing complete by the 1st of Jan. The last time I heard Fred he was at O'lean Cal. he wanted me to come out there and go to work but I cant leave until I get this business attended to.

"I was in Monroe La., last week and ever body is getting on O. K. we are all well here times are awful dull, but we manage to live. I want to get away as soon as possible.

"I have no news to write so will close, with best to you both.

"I am your Bro.

"CLYDE."

Paul received this letter, and he thereupon signed and acknowledged the deed to Clyde, and mailed the same to Fred for execution, with the following note on the bottom of the letter:

"Fred:

"I have thought this over, and decided that it is O. K. Provided, we keep this letter, which will serve as a note signed by Clyde securing us and after all it will perhaps save the place.

"Will rush same to you for your attention. I am well and hope you are.

"With love from,

"Paul"

Fred also executed and returned the deed; and the other heirs thereafter did likewise. This quitclaim deed recited as a consideration $1.00 and the assumption of an indebtedness due the Federal Land Bank of New Or-

leans, Louisiana. On March 19, 1934, H. C. Mayo, for a like consideration, also conveyed and quitclaimed the land to Clyde, who obtained a loan from the Land Bank Commissioner, and on April 30, 1934, he and his wife executed a deed of trust to the Land Bank Commissioner on this land to secure the payment of $300.00 in ten annual installments. This instrument was acknowledged and filed for record on the same date. With the proceeds, Clyde paid off delinquent installments on the deed of trust to the bank and some accumulated taxes. He thereafter rented the place every year from 1934 until his death, and the rent was paid to him. He and his tenants also pastured cattle on the place. No rent was ever paid by him to any of the other Holcomb heirs. He paid all taxes. He sold some timber in the early Forties, and was selling some at the time of his death on March 19, 1950. The other Holcomb heirs visited him and his family frequently, but they never said anything about a claim to the land. After Clyde's death, his widow continued to rent the place and collect the rents, and also sold timber for several months thereafter.

On June 27, 1953, Mrs. Eva Holcomb and her four children, the sole heirs of Clyde, conveyed to Masonite Corporation eighty acres of land not involved in this controversy, which was, by stipulation, eliminated from this lawsuit.

The appellants contend that Clyde, in his letter, expressly promised to make a deed to each heir for a one-ninth part of the estate, and that therefore an express trust in writing was created in accordance with Section 269, Code of 1942, which is as follows: "Hereafter all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will, in writing, or else they shall be utterly void; and every writing declaring or creating a trust shall be acknowledged or proved as other writings, and shall be

lodged with the clerk of the chancery court of the proper county to be recorded, and shall only take effect from the time it is so lodged for record; but where any trust shall arise or result, by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed.''

This statute requires that, for an express trust, not only shall the declaration be in writing, but that such writing ''shall be acknowledged or proved as other writings, and shall be lodged with the clerk of the chancery court of the proper county to be recorded, and shall only take effect from the time it is so lodged and recorded * * *''

██ ■ The case of Board of Trustees, etc. v. Odom, 100 Miss. 64, 56 So. 314, was a construction of what is now Section 269, supra. Mrs. Stuart had executed a conveyance (subject to her life estate) as a trust. Delivery was omitted from the acknowledgment. The opinion said: ''In other words, the statute expressly declares that, unless the instrument which declares the trust is properly lodged for record, it shall have no effect. This instrument, it is confessed, contained no acknowledgment of delivery, and hence was not entitled to record, from which it inevitably follows that the attempted trust never had any effect.'' Neither was the letter here in question lodged for record. Obviously it was not subject to recordation. It therefore did not meet the requirements, under Section 269, supra, for an express trust.

██ ■ Obviously there is a trust relation where property is placed by one person in the hands of another, or where title is conveyed for a limited purpose. 89 C. J. S., Trusts, Section 50 a, p. 798.

However, Section 746, Code of 1942, provides as follows: ''Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all

other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after; (except as to persons under disability) * * *"

■■ "This statute (Section 746, supra) applies to either express or implied trusts." Hook v. Bank of Leland, 134 Miss. 185, 98 So. 594, citing Stanton v. Helm, 87 Miss. 287, 39 So. 457; Mitchell v. Bank, 98 Miss. 658, 54 So. 87.

The statute runs against the cause of action. It begins to do so "from the time the wrong is committed by which the party becomes chargeable by legal implication." Cooper v. Cooper, 61 Miss. 676.

The above section was held to be the applicable statute of limitation in the case of Robinson v. Strauther, 106 Miss. 754, 64 So. 724, where a son used his mother's funds and did not account for them or for the property, which he bought with such funds and placed in his own name.

■■ The repudiation of an implied or constructive trust is not necessary to set the statute of limitation in operation. ■■ "The statute begins to run (in such trusts) from the time the act or acts were committed by which the actor becomes chargable." Rimmer v. Austin, 191 Miss. 664, 4 So. 2d 224. Cf. Sullivan v. Nobles, 211 Miss. 330, 51 So. 2d 736.

■■ The letter from Clyde to Paul and Fred assured them that if they would execute the deed so that he could "refinance the old place through the Federal Land Bank Commissioner" he could pay up the back taxes and installments, prevent a foreclosure, and save the place. Then he said, "Now I will make each one of the heirs a deed to 1/9 Part of the Estate after I get the loan made." The letter was written evidence of his agreement to make the deeds therein mentioned. The loan was made and the deed of trust was signed, acknowledged and recorded on April 30, 1934. It thereupon became the duty of Clyde, in accordance with the terms of

his letter, to execute and deliver to each of the heirs a deed to one-ninth interest in the estate. The cause of action of the heirs then arose and accrued. They were all adults. ▮▮ However, they did not bring a suit within ten years. Actually they did not institute their suit until February 16, 1955—over twenty years after their cause of action accrued. Consequently, under Section 746, supra, their claim was barred.

The learned chancellor held, in effect, that the cause of action accrued as of the date of the letter. In this he was in error because April 30, 1934, was the date of the consummation of the loan, and therefore the date of the accrual of the cause of action, as stated above. This was immaterial as, under this decision, the difference in time amounts to only a few months and not enough to save the cause of action.

It is unnecessary to consider whether the letter in question falls within the statute of frauds, as argued by the appellees.

From which it follows that the decree of the trial court must be affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.