# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00444-COA

| | |
|---|---|
| L.H. MANNING, VIRGINIA WARREN, JOHN HENRY MANNING, GEANNIE JONES, NIKIESHA FUNCHESS, AND EVA MANNING | APPELLANTS |

v.

| | |
|---|---|
| ROBERT PERRY AND PAIGE PERRY | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 09/10/2015 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHNELL MOSBY MATTHEWS |
| | CHRYSTAL MICHELLE MATTHEWS |
| ATTORNEY FOR APPELLEES: | WAYNE DOWDY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED: 11/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

FAIR, J., FOR THE COURT:

¶1.     This action involves a roughly seventy-eight acre parcel of land in Pike County, once owned by Henry and Addie Manning.  Part of an eighty-six acre parcel that had been titled in their names, they deeded it to their son Ed in 1994.  Following his death in 2011, his widow and sole devisee, Joan Manning, sold the seventy-eight acre parcel to Robert and Paige Perry in a transaction financed by the Pike National Bank ("the Bank").

¶2.     Ed's siblings, claiming Ed was only the trustee of their parents' former land, sued Joan, the Perrys, and the Bank for an adjudication of their ownership of the property as beneficiaries of a constructive trust of which Ed had been trustee.  The chancellor granted

motions for partial summary judgment filed by the Perrys and the Bank, dismissing the Perrys and the Bank as defendants.

¶3. The chancellor certified that his partial summary judgment was final, and the Mannings have appealed as to the Perrys. Joan remains the sole defendant, litigating title to the remaining 9.05 acres of the original eighty-six on which the Manning family home is located. Joan had deeded the home to the Mannings upon the dismissal of their first suit against her.

## Record Title

¶4. An examination of the Pike County land deed records reflects that in 1994 Henry and Addie executed a quitclaim deed conveying their eighty-six acres of real property to their son Ed, one of their seven children. Very shortly thereafter, Henry died; Addie followed him in death in 1998. They were survived by Ed and his six siblings. Ed's siblings are the plaintiffs and appellants in this cause.

¶5. In 2011, Ed died at home in Texas. Probated in his home state, his will was also probated in an ancillary proceeding in Mississippi. Pursuant to his will, the eighty-six acre parcel deeded to him by his parents passed to his wife Joan along with all of his other assets. Passage of title was reflected in a final judgment in the Mississippi probate action, which was filed of record in the Pike County land deed records. Thereafter Joan, relying on that judgment, sold seventy-eight of the eighty-six acres to the Perrys for almost $244,000 by warranty deed dated October 18, 2013.

¶6.    On the date of the deed from Joan to the Perrys, Joan held clear record title to all eighty-six acres described in Ed's deed from his parents. Shortly before the sale, however, the Mannings had filed against Joan for the first time. They sought adjudication of the deed as part of an established family trust by their parents and conversion of the quitclaim to Ed to a trust instrument. The Mannings did not file a lis pendens notice until after Joan's deed to the Perrys had been executed and recorded, as had the deed of trust in favor of the Bank.

¶7.    The Perrys obtained a title opinion prior to closing and a loan from the Bank, and purchased both lender's and owner's title insurance. Around $94,000 in a down payment came from their funds, and the Bank loaned them the remainder. They testified that they relied on the advice of their realtor and their lawyer and the land deed records of Pike County in closing on their purchase of the seventy-eight acres.

### Claim of the Mannings

¶8.    At the time record title passed to the Perrys, there was no active claim to the realty in question reflected in the land deed records by Ed's six siblings. There was, however, a pending lawsuit against Ed's widow, Joan, by the Mannings. It was dismissed from the Pike County Chancery Court, refiled in the U.S. District Court for the Southern District of Mississippi, dismissed again, and refiled for the third time in this action. In each of their filings, the Mannings asserted that Ed was not really a fee simple owner of the real estate at issue, but was rather a trustee of the land for himself and his siblings. On their return to the chancery court, they again filed for reformation of the 1994 deed and imposition of a

3

constructive trust on the 9.05 acres now titled of record in Joan's name and, as well, the seventy-eight acres held by the Perrys.

## Course of Litigation

¶9.     The Mannings filed their first suit seeking reformation of the deed and imposition of a constructive trust against Joan on August 13, 2013.  That first filing was pending on October 18, 2013, when she sold the seventy-eight acres at issue to the Perrys.  A lis pendens notice reflecting the litigation was filed of record on November 8, 2013, after the deed to the Perrys had been filed.  A little less than a month after the lis pendens was filed, the Mannings dismissed their first case against Joan.

¶10.    Over the ensuing two years, the Mannings filed two more actions, the first in federal district court based on diversity of the parties.  When it was asserted and acknowledged by the district court that the Bank was a necessary party by virtue of its note for $142,006.02 from the Perrys and the deed of trust securing it, the case was dismissed without prejudice. The Mannings then filed their third case against Joan, the Perrys, and the Bank in the Chancery Court of Pike County.[1]  A second lis pendens notice was filed by the Mannings, and Joan and the Perrys answered.  Their answer included several affirmative defenses, among them the statute of frauds and two statutes of limitations.  Joan and the Perrys failed, however, to formally assert their defense of "bona fide purchaser of value without notice,"

---

[1] The Mannings initially brought several claims regarding the deed, including its authenticity and validity.  Their challenge was abandoned in the lower court.

which was nevertheless tried and relied on by the chancellor in considering the motion for partial summary judgment now before this Court.

¶11. After several months of discovery, the Perrys and the Bank moved for summary judgment, as did Joan and the Ed Manning estate. The chancellor granted partial summary judgment in favor of the Perrys and the Bank, but denied the motions of Joan and her husband's estate. The chancellor found the Perrys were bona fide purchasers for value without notice[2] and granted summary judgment. The chancellor subsequently denied the Manning siblings' motion to reconsider, so they appealed to this Court.

**The Summary Judgments on Appeal and
Purchase Money Lien of the Bank**

¶12. The chancellor specifically held that his ruling was exclusively based on his determination that the Perrys were bona fide purchasers without notice. He held that his decision was not based on any consideration of the statutes of limitations relied on by the Perrys and Pike National Bank, which had claimed to be bona fide lienors without notice.

¶13. Though they relied on the concept of a bona fide purchaser without notice, they argued at length in their brief that the statutes of limitation and the statute of frauds were controlling. They urged that the Mannings filed too late. Mississippi Code Annotated section 15-1-39 (Rev. 2012) provides:

---

[2] At the time of the hearing, the only lis pendens in effect was filed by the Mannings some two years after the Perrys had purchased the property. The previous lawsuit from 2013 had been dismissed in December 2013. The federal litigation had likewise been dismissed.

5

Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after, saving, however, to all persons under disability of infancy or unsoundness of mind, the like period of time after such disability shall be removed. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one years.

¶14. A similar statute was also argued. Mississippi Code Annotated section 15-1-7 (Rev. 2012) provides:

A person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same.

¶15. The chancellor did not discuss Mississippi Code Annotated section 15-3-1 (Rev. 2012), the statute of frauds, also argued by the Perrys and the Bank, which provides that "an action shall not be brought whereby to charge a Defendant or other party . . . upon any contract for the sale of land . . . unless the promise or agreement upon which such action may be brought . . . shall be in writing and signed by the party to be charged therewith."

¶16. In his ruling in favor of the Perrys and the Bank, the chancellor stated:

Okay. The Court has heard the arguments, has reviewed the Briefs, and the [m]otions that are filed herein, and I am going to address the parties from the easiest to the hardest.

As to Pike National Bank there is no question. I have looked at all the [a]ffidavits. They are entitled to summary judgment. As a matter of fact, based on them extending money and nothing being of record that would have notified them that there was any question as to the ownership of this property;

therefore, they are entitled to a dismissal with prejudice and to retain their lien on the subject property.

As to Robert Perry and wife, Paige Perry, a little bit closer call, but the Court is satisfied that they are, likewise, entitled to a judgment under the summary judgment. And I am basing this on bona fide purchase of the value without notice. Even from the argument of Ms. [Joan] Manning, they raised this question with their attorney. The Court notes that the only filing that is before the Court at this time is a 2015 filing. Therefore, this was filed after they had purchased the property. The lis pendens that is on file may have been delayed to a previous lawsuit, however, that lawsuit evidently was dismissed and a new one was filed. So, therefore, they are entitled to the property.

. . . .

In making those rulings and basically ignoring any statute of limitations or statute of frauds as to the Mannings, I mean, to the Perrys, and Pike National Bank because I don't think there is any.

As to the estate of Edward Richard Manning and Ms. [Joan] Manning, herself, which she deeded part of the property to her, the lawsuit will remain and go forward.

## STANDARD OF REVIEW

¶17. "In reviewing a trial court's grant or denial of summary judgment, the well-established standard of review is de novo." *Crist v. Loyacono*, 65 So. 3d 837, 842 (¶12) (Miss. 2011). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Crist*, 65 So. 3d at 842 (¶12) (citation omitted).

7

¶18.    We also review the existence of a constructive trust de novo. *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (¶26) (Miss. 2014) (citation omitted). "The party advocating a constructive trust must show by clear and convincing proof that a constructive trust is necessary as a matter of law." *Id.*

## DISCUSSION

¶19.    Since their first filing in 2013, the Manning siblings have maintained the position that they all now possess the property and that Ed never intended to claim sole ownership of the property. Further, the siblings claim they shared all expenses for maintenance and preservation of the property. One of the siblings, L.H. Manning, was reportedly living in the Mannings' home when Ed's will was probated in 2013. In their opposition to summary judgment, the Manning siblings submitted affidavits from four siblings and an affidavit of a neighbor who witnessed a conversation between L.H. and Robert Perry. They also submitted a letter from Ed to L.H. regarding the sale of the disputed property; Ed's letter used the words "we" and "us," including the siblings as interested persons. Based on the evidence in the record, the siblings make a legitimate issue of whether or not the parents, Ed, and his siblings contemplated that when Ed died, the property would be transferred to them. The siblings also claim that the Perrys were aware of a pending lawsuit between themselves and Joan when they purchased the subject property.

### 1.    Implied or Constructive Trust

¶20.    The Manning siblings assert that the 1994 deed is an implied or constructive trust and

not a simple quitclaim deed, which it appears to be on its face. L.H. claimed in his affidavit that Stewart Robison, the preparer of the deed, did not talk to Henry or Addie concerning their intentions for the deed. Rather, L.H. asserted, Robison only spoke to L.H. and two other siblings, all of whom stated that their parents wished to make Ed a trustee, who would later divide the property with all of them. Robison, the lawyer who drafted the deed, provided an affidavit to the contrary:

> At no time did anyone, including L.H. Manning nor the Grantors, Henry Manning and Addie Manning, make any statement regarding the creation of a constructive trust in the deed or any other type of trust or that the property was to be held in trust by Edward Richard Manning, other than an outright grant of the title to the Grantee, Edward Richard Manning . . . . At the hospital, I introduced myself to Mr. Henry Manning and his wife, Mrs. Addie Manning. Mr. Manning was unable to speak because of his medical treatment devices. I am convinced that Mr. Henry Manning understood the Quitclaim Deed, freely and voluntarily signing it, and that the Quitclaim Deed was intended to vest in fee simple title in Edward Richard Manning.

## Statute of Limitations on Constructive Trusts

¶21. "While an express trust must be written, implied [or constructive] trusts differ in that they arise by implication of the law or are presumed from the circumstances." *Smiley v. Yllander*, 105 So. 3d 1171, 1175 (¶12) (Miss. Ct. App. 2012). The statute of limitations applicable to actions involving constructive trusts provides that "[b]ills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . . ." Miss. Code Ann. § 15-1-39 (emphasis added). The statute begins to run "from the time the act or acts were committed by which the actor becomes chargeable." *Alvarez*

9

*v. Coleman*, 642 So. 2d 361, 374 (Miss. 1994) (quoting *Thames v. Holcomb*, 230 Miss. 387, 395, 92 So. 2d 548, 552 (1957)). In other words, "[t]he right to enforce an implied or constructive trust accrues at the time of performance of the act from which the trust results." *Stebbins v. Hayes*, 379 So. 2d 898, 903 (Miss. 1980).

¶22.   Here, the key question is what chargeable act caused the statute to run – the filing of the 1994 deed, Henry's death in 1994, Addie's death in 1998, Ed's death in 2011, or the ancilliary probate of Ed's will in June 2013. The Manning siblings' situation is similar to that of the siblings in *Thames*. In *Thames*, Clyde Holcomb asked his siblings to sign a deed putting an old family house in his name so he could refinance it and avoid foreclosure. *Thames*, 230 Miss. at 395, 92 So. 2d at 552. Holcomb promised he would make his nine siblings equal heirs to the property after he obtained the loan. *Id*. The siblings agreed, and Holcomb got the loan, but he did not deliver new deeds to his siblings. *Id*. at 396, 92 So. 2d at 552. The Court held the siblings' cause of action accrued on the day that the loan was made and the deed of trust was signed, because the siblings expected to get their deeds at that time. *Id*.

¶23.   Following the court's reasoning in *Thames*, section 15-1-39 could have begun to run in 1994, when the deed was executed and recorded, giving notice to the world of an unrestricted transfer of all their property by Henry and Addie to their son Ed. More likely, however, the family logically intended for Ed to hold title and perform his duties as trustee by deeding over the property to himself and his siblings when Addie died. Had the property

10

remained in their hands until the last to die of Addie and Henry, then the statute would begin to run on Addie's death in 1998. At that point any or all of the siblings had the right to clarify, by litigation if necessary, the title and insist Ed deed and vest each of his siblings with a full child's part of the land to which they were entitled (and which they would have received on her death by intestate succession). Such a process would comport with intent of the members of the family if that intent was to avoid probate and, as well, provide a clear title to the children in accord with such an intent.

¶24. So Ed's siblings had until 2008 to make any conflicting claim, and specifically a claim for an implied or constructive trust. Instead, they waited until 2013, nearly twenty years later when all three of the parties to the deed in question were no longer able to express and/or take action to clarify the nature of the instrument at issue, which appears nowhere else in writing and of record in the land deeds of Pike County. Consequently, their claim is barred. To hold otherwise could significantly place the title search and title opinion process in jeopardy.

### 2. Bona Fide Purchasers and Lienors

¶25. The Manning siblings hinge their claims on the assertion that the Perrys were not bona fide purchasers of the subject property. Mississippi Code Annotated section 89-5-3 (Rev. 2011) provides for the effect of filing of the conveyances as notice and for the protection of bona fide purchasers for value:

> Failure to file such instrument with the clerk for record shall prevent any claim of priority by the holder of such instrument over any similar recorded

11

instrument affecting the same property, to the end that with reference to all instruments which may be filed for record under this section, the priority thereof shall be governed by the priority in time of the filing of the several instruments, in the absence of actual notice. But as between the parties and their heirs, and as to all subsequent purchasers with notice or without valuable consideration, said instruments shall nevertheless be valid and binding.

"[A] real estate purchaser's claim to be a bona fide purchaser for value without notice is 'an affirmative defense and must be sustained by competent proof.'" *Wheeler v. Burton*, 958 So. 2d 1266, 1271 (¶18) (Miss. Ct. App. 2007) (quoting *Memphis Hardwood v. Daniel*, 771 So. 2d 924, 933 (¶32) (Miss. 2000)). The Perrys failed to raise an affirmative defense regarding their purchaser status, and they completely ignore the issue on appeal. Because we find the statutes of limitations to be dispositive, we find this issue is moot.

¶26. We should note that the filing statute noted above states that "as between the parties and their heirs, and as to all purchasers with notice or without valuable consideration, said instruments shall nevertheless be valid and binding."

¶27. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., NOT PARTICIPATING.**

12